[No. 13357-1-II.    Division Two.    October 30, 1991.]

SEEK SYSTEMS, INC., *Respondent*, v. LINCOLN MOVING/
GLOBAL VAN LINES, INC., *Appellant.*

*Michael H. Korpi* and *Allison, Davis & Baldwin,* for appellant.

*Robert S. Felker* and *Felker, Lazares & Johnston; Leslie O. Stomsvik,* for respondent.

MORGAN, J. — Global Van Lines, Inc., appeals from the trial court's refusal to vacate an order of default. We affirm.

On April 12, 1988, Seek Systems, Inc., filed a summons and complaint alleging that Global Van Lines had caused $10,000 damage to Seek's computer equipment during a move. On April 20, 1988, Seek served Global.

Global failed to file a written notice of appearance, and on July 29, 1988, the trial court, on Seek's motion and without further notice to Global, granted an order of default and a default judgment for $10,000. Both the order and judgment were filed on August 2, 1988.

On August 18, 1989, Global was served with a writ of garnishment. On August 30, 1989 — more than 16 months after the original service — Global filed a motion to vacate the default judgment. The motion did not expressly ask that the order of default be vacated, but it cited CR 55(c)[1] as well as CR 60(b) and (e).[2]

The motion was first heard before a superior court commissioner, who denied it entirely. Global then filed a motion for revision. On October 6, 1989, the trial judge vacated the default judgment, but declined to vacate the order of default. Global appealed the order refusing to vacate the order of default; Seek did not cross-appeal the order vacating the default judgment.

Global's motion to vacate was based on the declaration of Dan Bartholemy, its director of customer relations. According to that declaration, Bartholemy telephoned Seek's counsel, Robert Felker, on June 15, 1988. He told Felker that Global was not at fault; that Global's maximum liability was $300; that he would send Felker a copy of the bill of

---

[1] CR 55(c) sets forth the ground for setting aside an order of default. It provides in part:

"(1) *Generally.* For good cause shown and upon such terms as the court deems just, the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with rule 60(b)."

[2] CR 60(b) and (e) set forth the grounds and procedures for setting aside a final judgment.

lading showing Global's maximum liability; and that Global would settle for $300. Felker replied "that he will not take default unless he notifies us in writing." Attached to the declaration were notes that Bartholemy said were taken during the conversation. Missing was any cover letter or similar document showing that the bill of lading was sent to Felker, but the notes say it was sent the same day.

Seek responded by filing an affidavit from Felker. In the affidavit, Felker stated that a Global representative called him and told him that some material was being sent to him. He asserted that he never received a bill of lading, and he denied saying that he would give further notice to Global before taking a default.

Between June 15, 1988, the date of the phone call, and August 18, 1989, the date when Global received the writ of garnishment, there was no further communication between the parties.

Global argues that the June 15, 1988, phone call constituted a notice of appearance. If well taken, this argument would mean that the trial court was required to set aside the order, as opposed to having discretion on the matter. *See Tiffin v. Hendricks*, 44 Wn.2d 837, 847, 271 P.2d 683 (1954); *Whatcom Cy. v. Kane*, 31 Wn. App. 250, 252, 640 P.2d 1075 (1981). A party who has appeared must be given 5 days' written notice of a motion for default, CR 55(a)(3), *see also* CR 55(a)(1), and Global was not given such notice.

The argument is not well taken. CR 4(a)(3) states in part:

A notice of appearance, if made, shall be in writing, shall be signed by the defendant or his attorney, and shall be served upon the person whose name is signed on the summons.

RCW 4.28.210 is to the same effect. It provides in part:

A defendant appears in an action when he answers, demurs, makes any application for an order therein, or gives the plaintiff written notice of his appearance.

These methods of appearance are not exclusive. *Dlouhy v. Dlouhy*, 55 Wn.2d 718, 721, 349 P.2d 1073 (1960);

*Gage v. Boeing Co.*, 55 Wn. App. 157, 161, 776 P.2d 991, *review denied*, 113 Wn.2d 1028 (1989). A writing served on or sent to the opposing party can be a notice of appearance, even though not denominated as such, *e.g.*, *State ex rel. Trickel v. Superior Court*, 52 Wash. 13, 100 P. 155 (1909) (interrogatories treated as notice of appearance), and even though not filed with the court before a default is taken. *Tiffin v. Hendricks, supra* (notice of appearance served on opponent but not filed). *See also H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) (letter to counsel and settlement negotiations treated as appearance). A personal appearance by the defendant in open court has been treated as a notice of appearance. *Dlouhy v. Dlouhy, supra*. Appearing in and vigorously contesting the earlier, administrative stages of the same action has been held to carry over and constitute an appearance in an appeal de novo to superior court. *Gage v. Boeing Co.*, 55 Wn. App. at 162.

However, we are aware of no Washington case, and the parties have cited none, in which an out-of-court oral conversation, either telephonic or in person, was treated as a notice of appearance. Under particular circumstances, courts in other jurisdictions have held that such conversations amounted to an appearance where the defendant demonstrated a clear purpose to defend the suit. *Lutomski v. Panther Vly. Coin Exch.*, 653 F.2d 270, 271 (6th Cir. 1981) (two conversations in which defendant requested extension of time constituted appearance); *Segars v. Hagerman*, 99 F.R.D. 274, 276 (N.D. Miss. 1983) (two agreements between counsel for additional time to answer). Under different circumstances, however, other courts have held to the contrary. *Merrill v. Tabachin, Inc.*, 107 N.M. 802, 804, 765 P.2d 1170, 1172 (1988) (two telephone calls, each from a different attorney, held not to constitute appearance); *Hochhalter v. Great Western Enters., Inc.*, 708 P.2d 666, 670-71 (Wyo. 1985) (two telephone calls, one indicating answer had been filed when

that was not true, held not to constitute appearance); *see Ryan v. Collins*, 481 S.W.2d 85, 88 (Ky. 1972) (though defendant testified that opposing attorney agreed to inform him of further steps in the action if settlement not reached, court held that there was no evidence of intent to defend the suit).

Because it is unnecessary to the disposition of this case, we refrain from deciding that one or more phone calls cannot ever constitute a notice of appearance, although strong practical arguments may favor that rule.[3] Instead, we assume that a single phone call can constitute a notice of appearance if the caller is one who could appear for the defendant, *see Washington State Bar Ass'n v. Great Western Union Fed. Sav. & Loan Ass'n*, 91 Wn.2d 48, 56, 586 P.2d 870 (1978), the caller recognizes that the case is in court, *Dlouhy v. Dlouhy*, 55 Wn.2d at 721, and the caller manifests an intent to defend. *Gage v. Boeing Co.*, 55 Wn. App. at 162; *see also* Annot., *What Amounts to "Appearance" Under Statute or Rule Requiring Notice, to Party Who Has "Appeared," of Intention To Take Default Judgment*, 73 A.L.R.3d 1250, § 10 (1976); 6 J. Moore, *Federal Practice* § 55.05[3] (2d ed. 1985). Under this test, the trial court will on occasion be required to decide questions of fact, including but not necessarily limited to the identity of the caller, what was said in the phone call, and whether the caller manifested an intent to defend. As provided in CR 43(e)(1), the trial court may hear the matter on affidavits, or direct that testimony be taken.

The facts in this case involve a single phone call. The call was not from an attorney — if Global had hired an attorney,

---

[3]A telephone call is impermanent and often difficult to prove. It may also be ambiguous. When parties can resort to the simple expedient of an answer, written notice of appearance or personal appearance in court, *see* CR 4(a)(3); RCW 4.28.210; *Tacoma Recycling, Inc. v. Capitol Material Handling Co.*, 34 Wn. App. 392, 395-96, 661 P.2d 609 (1983); *Dlouhy v. Dlouhy, supra*, it is arguable that a court should not spend time litigating the contents and circumstances of a particular phone call.

that might be a factor manifesting an intent to defend — but rather was from Global's "director of customer relations". Taking Global's version of the call, the caller asserted lack of fault and offered to settle for its alleged maximum liability of $300, but said nothing about any intent to hire Washington counsel or appear in the suit. Most importantly, for the next 14 months neither the caller nor Global did anything whatsoever to respond to or defend the suit. Under these circumstances, the most reasonable inference is that there was no true intent to defend and no real recognition that the case was in court; and as a result, the phone call did not constitute a notice of appearance.

■ Global's second argument is that even if it failed to appear, the trial court abused its discretion when it refused to set aside the order of default. The applicable rule is CR 55(c)(1), which provides that a trial court may set aside an order of default for good cause shown. Under this rule, whether to set aside an order of default is a decision within the discretion of the trial court. *Canam Hambro Sys., Inc. v. Horbach*, 33 Wn. App. 452, 453-54, 655 P.2d 1182 (1982). Although the requirements for setting aside a default order are not entirely the same as those for setting aside a default judgment, *Canam,* at 453, two factors to be considered in each instance are excusable neglect and due diligence overall.[4] *See Gage,* at 163; *Northwest Adm'rs, Inc. v. Roundy,* 42 Wn. App. 771, 774, 713 P.2d 1127 (1986).

In this case, Global made one phone call, then did nothing else for 14 months.[5] Under these circumstances, it was

---

[4]The cited cases refer to a defendant's due diligence after notice of a default judgment. We believe, however, that due diligence overall is also an appropriate factor to be considered.

[5]Global relies on *Hull v. Vining,* 17 Wash. 352, 49 P. 537 (1897), which held that a trial court abused its discretion by not setting aside a default order and judgment. *Hull,* however, is distinguishable from the present case, for the defendant moved to set aside the default 7 days after the default judgment, 47 days after the default order, and less than 4 months after service of process.

well within the trial court's discretion to conclude that Global's neglect was not excusable, and that Global failed to exercise due diligence.

Affirmed.

ALEXANDER, J., concurs.
WORSWICK, C.J., concurs in the result.