[No. 22631-6-II. Division Two. January 8, 1999.]

*In the Matter of the Estate of* GEORGE C. STEVENS.

22

*Henry Haas* of *McGavick Graves, P.S.*, for appellant.
*David K. Palmer* of *Cullen Law Office*; *David D. Cullen* of *Law Office of David D. Cullen*; and *Rene J. Remund* of *Armstrong Vanderstoep Remund*, for respondents.

HOUGHTON, C.J. — Maxine Curtis appeals the trial court's

denial of her motion to vacate a default order entered against her. We affirm.

## FACTS

George C. Stevens (Stevens) was a single man, without children or descendents, who traveled the country in a motor home, but retained his residence in Thurston County. Bob Stevens, James Stevens and Ruth Lauer are Stevens' brothers and sister. They are the only takers of Stevens' intestacy property under Washington law.

Salley Stevens, Barbara Stevens-Hill, Carol Ann Stevens-Kruize, and Rita Stevens are daughters of Bob Stevens, and, thus, were Stevens' nieces. Andrea Hill and Donald Hill are the children of Barbara Stevens-Hill, and were Stevens' grandniece and grandnephew.

Maxine Curtis, Kathy Purcell, Sarah Rosolek, and Kathleen Powell Knight were Stevens' friends. Shriners Hospital for Children is a nonprofit corporation.

On or about March 7, 1994, Stevens executed and acknowledged the George C. Stevens Trust in Maricopa County, Arizona. The trust had been prepared by an attorney in another state, Dwight F. Bickel, and was mailed to Stevens to execute. Stevens executed two originals of the trust, both as grantor and trustee. Although Stevens acknowledged the trust document, no other witnesses signed the trust. Kathleen Powell Knight and Rita K. Stevens later executed one original of the trust as successor cotrustees, but not in each other's presence.

The George C. Stevens Trust was a revocable living trust, which named Stevens as its initial trustee but designated Kathleen Powell Knight and Rita K. Stevens as successor trustees. The trust further provided in paragraph 6.2:

> [ ]If a Successor Co-Trustee shall be unable or unwilling to serve as Co-Trustee when required to do so, or having assumed such office shall thereafter cease to, or for any reason become unable to, act as Co-Trustee, an Alternate Successor Co-Trustee shall automatically succeed to the office of Co-

Trustee to fill the vacancy in the same manner, and with like powers and authority, as provided herein with respect to the originally designated Successor Co-Trustee . . . .

The trust named Bob Stevens as the first Alternate Successor Co-Trustee.

"Schedule 'A' " was attached to the trust but was neither signed nor initialed by Stevens. The schedule contained a list of property transferred to the trust by Stevens. The list included, "All household furnishings, goods, and appliances, and all jewelry and personal effects, or other personal property of any nature and wherever situated (*except motor vehicles*) now owned by Grantor."

"Schedule 'B,' " also attached to the trust, provided a cash gift to Kathleen Powell Knight. This provision was in Stevens' handwriting and was signed but not witnessed. It provided, "One percent of final net worth after all expenses & taxes are paid, for promptly setteling [sic] this matter as approved by Rita K. Stevens co-trustee." The trust also contained a document titled "Schedule 'C,' " which named the beneficiaries entitled to the remainder of the trust estate.

On July 18, 1996, Stevens died while traveling with Rita Stevens. On or around July 19, 1996, Kathleen Powell Knight wrote to Bob J. Stevens, relinquishing her appointment as successor cotrustee. Knight had never performed any duties as a cotrustee of the George C. Stevens Trust.

After Stevens' death, Bob Stevens and Rita Stevens collected Stevens' papers and property from Stevens' motor home. While reviewing Stevens' records, they found two bound copies of the trust. The Schedule "C" on both copies was the same.

On or about July 30, 1996, Bob Stevens received a second letter from Knight, requesting certain documents. Her letter stated that she needed to review them for completeness, although she did not say what she thought might be incomplete. On August 7, 1996, Rita Stevens sent Knight copies of the death certificate, will, and trust. At the time

Rita Stevens sent Knight the copies, she had no information of any other Schedule "C."

Rita Stevens and Bob Stevens heard nothing from Knight until about September 4, 1996, when her attorney contacted their attorney, disputing the contents of Schedule "C." Knight asserted that the valid Schedule "C" was actually the "Bickel Schedule C," which was found with a copy of the trust held by the attorney who created the trust, and was materially different from the Schedule "C" found in Stevens' motor home. Knight claimed that (1) the shares of Maxine Curtis, Kathy Purcell, Sarah Roselek, and herself should be increased from "0.5% to 10%"; (2) the shares of nieces Rita Stevens, Salley Stevens, and Carol Ann Stevens-Kruize should be reduced from "20% to 10%"; (3) the share of niece Barbara Stevens-Hill should be reduced from "10% to nothing"; and (4) the share of the Shriners Hospitals for Children should be increased from 8% to 10%.

Sixty percent of the distribution is the same under both the Surviving Schedule C and the Bickel Schedule C. Under the Surviving Schedule C, however, the disputed forty percent passes to Stevens' nieces, whereas under the Bickel Schedule C, two percent passes to the Shriners Hospitals and the remaining 38 percent passes to friends of Stevens, including Knight and Curtis. The beneficiaries are the same on both schedules, with the exception of Barbara Stevens-Hill who is not a beneficiary under the Bickel Schedule C.

Two disinterested witnesses, Reed and Saffarrans, remember Stevens showing them the Surviving Schedule C. Knight, however, a beneficiary of the trust, asserted that that the Bickel Schedule C was the valid schedule.

To resolve the dispute, Bob Stevens and Rita Stevens filed a Petition for Interpleader in Thurston County Superior Court. Before beginning the interpleader, Rita Stevens informed the beneficiaries of the dispute and of her intention to file an interpleader action.

On February 7, 1997, Rita Stevens, as cotrustee and co-personal representative, filed a petition for Distribution of Net Income During Administration to approve distribution

of 1996 income to beneficiaries whose shares were undisputed. In her petition, Rita Stevens stated that Schedule C was in dispute and that she anticipated asking the court for guidance in the near future. The petition also outlined the different distribution percentages each beneficiary would receive under the Surviving Schedule C and under the Bickel Schedule C. Curtis acknowledged that she received this petition in February 1997.

On March 3, 1997, Bob Stevens and Rita Stevens filed their Petition of Interpleader and Declaratory Relief. In the petition, paragraph 14 stated that Curtis will receive only .5 percent of the remainder of the trust; paragraph 17 stated that the witnesses to Stevens' will saw Schedule C and their recollection of its distribution is consistent with the Surviving Schedule C; and paragraph 26 stated that Knight asserted that the Bickel Schedule C was valid. The petition asked the court to determine the shares under Schedule C.

On March 10, 1997, Bob Stevens and Rita Stevens sent Curtis a summons. The summons contained the following warning:

> In order to defend against this lawsuit, you must respond to the Petition by stating your defense in writing, and serve a copy upon the person signing this Summons within sixty (60) days after the service of this Summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where the plaintiff is entitled to what he asks for because you have not responded. If you serve a Notice of Appearance on the undersigned person you are entitled to notice before a default judgment may be entered.

Bob Stevens and Rita Stevens also sent Curtis a Notice of Hearing on Petition for Interpleader and Declaratory Relief.[1] The notice informed Curtis that the petition would come for hearing on May 19, 1997, and provided,

---

[1] As Respondents note, RCW 11.96.080 requires the trial court to make an order fixing the time and place for hearing the Petition, and to approve the form

YOU ARE FURTHER NOTIFIED to be and appear in said Department at the time and on the day set forth herein and defend the said petition, or a default judgment granting the said petition will be entered without further notice.

On April 23, 1997, Curtis accepted service of the petition, summons, and notice of hearing.

On April 29, 1997, Knight filed a response and affirmative defenses to the Petition for Interpleader and Declaratory Relief. In her response, Knight asserted that her resignation as cotrustee was not valid because it did not comply with the requirements set forth in 6.5 of the trust agreement, nor did it comply with the requirements of RCW 11.98.039. Knight further asserted that the Surviving Schedule C differs from the Schedule C that she saw at the time she executed the trust as the alternate cotrustee. Knight therefore argued that the Surviving Schedule C should be declared invalid, and that the trust be distributed according to the Bickel Schedule C.

The time for hearing stated in Curtis' notice, May 19, 1997, passed and Curtis filed nothing. On June 9, 1997, the court scheduled an evidentiary hearing on the petition for October 14 and 15, 1997. The deadline for responding to the summons, June 22, 1997, also passed and Curtis filed nothing.

On July 10, 1997, Bob Stevens and Rita Stevens filed a motion for default and notice of issue, seeking an order of default against Curtis on the petition. On July 9, 1997, notice of Bob Stevens and Rita Stevens' motion for default was mailed to Curtis. Curtis failed to respond, and the court entered an order of default against Curtis on July 21, 1997. The court did not enter a default judgment. At this time, Curtis neither moved to set aside the order of default, nor moved to answer the petition.

After receiving notice of the default, Curtis retained an attorney and entered a Request for Special Notice and a

and content of the notice. By Amended Ex Parte Order for Notice to Issue (Nunc Pro Tunc), the court approved the form and content of respondents' notice.

Notice of Appearance on September 25, 1997. Curtis made her appearance prior to a hearing on the Petition for Interpleader.

On October 7, 1997, Knight, Bob Stevens, Rita Stevens, and those parties who were active in the lawsuit entered a settlement agreement. As part of the agreement, Knight withdrew her objection to the Surviving Schedule C and the parties agreed upon Findings of Fact, Conclusions of Law, and Stipulated [ ][2] Default Judgment. According to the agreement, Stevens' nieces agreed to distribute part of their share to Knight. Between distributions from the trust and from Stevens' nieces, Knight was to receive 10 percent of the assets available for distribution.

On October 7, 1997, Bob Stevens and Rita Stevens moved to enter Findings of Fact, Conclusions of Law, and Stipulated [ ] Default Judgment, having previously had an order of default entered in their favor. They mailed notice of this motion to Curtis' counsel on October 3, 1997.

On October 9, 1997, Curtis filed a motion to vacate the order of default, under CR 37 and CR 60. In her motion, Curtis contended that she did not appear in the action because she relied upon the Response of Kathleen Knight. Curtis believed that Knight, as a cotrustee and co-personal representative, would be obligated to act in her best interests. Curtis, therefore, did not respond to notices from the court because she believed Knight would challenge Rita Stevens' position. In addition, Curtis declared that she only became aware of settlement negotiations on October 8, 1997, and that Knight had not given her notice that she intended to settle the dispute.

On October 14, 1997, the trial court heard the matter. The court denied Curtis' motion, refusing to set aside the order of default. The court concluded that there was neither excusable neglect, nor substantial evidence that the settlement agreement reached was inappropriate.

Further, the trial court entered Findings of Fact, Conclu-

[2]We have deleted the word "and" because we presume the parties meant "stipulated default judgment."

sions of Law, and Default Judgment on the Petition for Interpleader and Declaratory Relief. Under this judgment, the trial court declared the Surviving Schedule C the legally effective Schedule C. According to the judgment, Curtis' share under Schedule C was 0.5%.

On October 24, 1997, Curtis filed a motion for reconsideration of the court's order denying her motion to vacate the order of default, and reconsideration of the findings of fact and conclusions of law entered on October 14, 1997. On October 27, 1997, the trial court denied Curtis' motion.

On November 5, 1997, Curtis filed a second motion for reconsideration of its written order denying Curtis' motion to vacate, entered on October 27, 1997.

On November 7, 1997, the court denied Curtis' second motion for reconsideration, finding that no new facts or legal basis had been raised to grant reconsideration. Curtis appeals.

## ANALYSIS

Motion to Vacate Order of Default

Curtis first contends that the trial court erred in denying her motion to vacate the order of default entered against her. She asserts that the trial court abused its discretion in not finding that Curtis' failure to appear was based upon excusable neglect.

■ The decision on a motion to vacate an order of default or a default judgment is within the sound discretion of the trial court. *Seek Sys., Inc. v. Lincoln Moving/ Global Van Lines, Inc.*, 63 Wn. App. 266, 271, 818 P.2d 618 (1991); *Lindgren v. Lindgren*, 58 Wn. App. 588, 595, 794 P.2d 526 (1990), *review denied*, 116 Wn.2d 1009 (1991). That decision will not be reversed on appeal unless it plainly appears that the trial court abused its discretion. *Lindgren*, 58 Wn. App. at 595. Abuse of discretion means that the trial court exercised its discretion on untenable grounds or for untenable reasons, or that the discretionary act was manifestly unreasonable. *Id.*

"[T]he discretionary judgment of a trial court of whether to vacate [an order] is a decision upon which reasonable minds can sometimes differ." *Lindgren*, 58 Wn. App. at 595. Thus, if the decision "is based upon tenable grounds and is within the bounds of reasonableness, it must be upheld." *Id.*

■ ■ The Superior Court Civil Rules provide different standards for setting aside orders of default and default judgments. CR 55(c)(1), CR 60(b); *Seek*, 63 Wn. App. at 271. Generally, an order of default may be set aside upon a showing of good cause. CR 55(c)(1). To establish good cause under CR 55, a party may demonstrate excusable neglect and due diligence. *Seek*, 63 Wn. App. at 271. Whereas, the requirements for setting aside a default judgment are (1) excusable neglect, (2) due diligence, plus (3) a meritorious defense, and (4) no substantial hardship to opposing party. CR 60(b); *White v. Holm*, 73 Wn.2d 348, 352, 438 P.2d 581 (1968); *Canam Hambro Sys., Inc. v. Horbach*, 33 Wn. App. 452, 453, 655 P.2d 1182 (1982). In *Canam*, the court explained that, "[i]n contrast with CR 60(e), which requires that a defendant seeking to vacate a default *judgment* show a meritorious defense to the action, a party seeking to set aside an order of default under CR 55(c) prior to the entry of the judgment need only show good cause." *Canam*, 33 Wn. App. at 453.

■ Here, the trial court applied the default judgment standard under CR 60(b) in determining that Curtis' failure to appear and defend in the interpleader action was not excusable neglect. Thus, it considered whether there was a meritorious defense or hardship. But it also found no excusable neglect, without which neither an order of default nor a default judgment can be vacated. *Seek*, 63 Wn. App. 271.

Curtis contends that the trial court erred in denying her motion to vacate the order of default because it applied the standard for setting aside a default judgment, under CR 60(b), rather than an order of default, under CR 55(c). Curtis asserts that while the court correctly enumerated the

factors for setting aside a default judgment, the court had not yet entered a judgment against her. Therefore, the trial court erred in applying the meritorious defense standard and the hardship standard.

As explained above, although the requirements for setting aside an order of default are not entirely the same as those for setting aside a default judgment, two factors to be considered are the same, excusable neglect and due diligence. *Seek*, 63 Wn. App. at 271. As the court determined that there was no excusable neglect, any error in also determining that there was no meritorious defense is harmless.

█ Furthermore, Curtis moved to vacate the order of default, and for reconsideration under CR 60, not CR 55. Curtis never informed the trial court that it should consider vacating the order of default under CR 55, but consistently directed the trial court to the rules and case law under CR 60. Under the doctrine of invited error, Curtis cannot set up an error at trial and then complain about it on appeal. *In re Dependency of K.R.*, 128 Wn.2d 129, 147, 904 P.2d 1132 (1995) (where defense counsel moved for admission of polygraph testimony, defense counsel cannot claim error after trial court granted its motion); *Sundberg v. Evans*, 78 Wn. App. 616, 621, 897 P.2d 1285 (1995), *review denied*, 128 Wn.2d 1008 (1996) (where parties did not receive notice of motion for summary judgment, they could not claim error on appeal where they did not object to trial court's action, did not insist upon proceeding to trial, and tacitly agreed to trial court's summary resolution); *Nania v. Pacific N.W. Bell Tel. Co.*, 60 Wn. App. 706, 709-10, 806 P.2d 787 (1991) (a party that participates in the preparation of jury instructions without objection cannot claim error on appeal).

Excusable Neglect

█ Curtis also asserts that the trial court erred in determining that her failure to timely appear was not a result of excusable neglect. Curtis argues that the trial

court erred by failing to consider whether Curtis had a right to rely upon Rita Stevens and Bob Stevens to discharge their fiduciary duties in the best interests of the beneficiaries, or whether Curtis had a right to rely on Knight's response.

The trial court considered both these arguments on reconsideration and denied Curtis' motion. As Curtis contends, a trustee is a fiduciary who owes the highest degree of good faith, diligence, and undivided loyalty to the beneficiaries. *In re Estate of Ehlers*, 80 Wn. App. 751, 757, 911 P.2d 1017 (1996). In discharging their fiduciary duties in the best interests of the beneficiaries, Rita Stevens and Bob Stevens diligently set about the task to assess and distribute the trust assets as determined by the terms of the trust. But there was a dispute concerning the validity of two competing Schedule Cs. Because the trustees knew they could not fairly represent the competing interests of the beneficiaries, they properly filed a Petition for Interpleader and Declaratory Relief, asking the court to determine the shares under Schedule C. Rita Stevens and Bob Stevens further acted within their fiduciary duty by notifying all of the beneficiaries of the nature and reason for the action, and giving them sufficient opportunity to respond.

Curtis was provided with both a summons and a Notice of Hearing on Petition for Interpleader and Declaratory Relief. The notice informed Curtis that the petition would come for hearing on May 19, 1997, and provided,

> YOU ARE FURTHER NOTIFIED to be and appear in said Department at the time and on the day set forth herein and defend the said petition, or a default judgment granting the said petition will be entered without further notice.

On April 23, 1997, Curtis accepted service of the petition, summons, and notice of hearing, but she chose to do nothing. Curtis' failure to respond to the court's summons and notice was not a result of the trustees' breach of their fiduciary duty.

Curtis cites several cases to support her position that she

had a right to rely upon Rita Stevens, Bob Stevens, and Knight. The cases that Curtis cites, however, are factually distinguishable and do not support Curtis' contention.

Curtis asserts that she had a right to rely upon Knight's response brief because a defendant has the right to rely upon the answer of a codefendant. *Johnston v. Medina Improvement Club*, 10 Wn.2d 44, 116 P.2d 272 (1941). In *Johnston*, the trial court found it excusable that a defendant would have depended upon a codefendant to defend an action. *Johnston*, 10 Wn.2d at 52-53. In the present case, however, Knight is not a codefendant but is a beneficiary with competing interests to Curtis. Even if Curtis believed, as she argues here, that Knight was a cotrustee, it is still unreasonable for a beneficiary to depend upon a trustee to defend her interests in a court proceeding to resolve the validity of competing trust schedules. As not all beneficiaries will benefit equally, a trustee could not reasonably be expected to act in the best interests of all the beneficiaries.

Similarly, *Cammarano v. Longmire*, 99 Wash. 360, 361, 169 P. 806 (1918), is inapplicable to the present case. In *Cammarano*, the court found it excusable that a real party in interest might appear for one who is not a real party in interest. In the present case, however, Curtis is a real party in interest with her own distinct interests in the trust assets.

In the Florida case, *Mims v. Miller*, 513 So. 2d 1120 (Fla. Dist. Ct. App. 1987), the court held that a beneficiary under a will had a right to rely upon the answer of a personal representative. In *Mims*, the testator died leaving behind two competing wills. The first will named William Miller as personal representative and residuary beneficiary, whereas the second will named Robert Hobbs as personal representative and Mims as residuary beneficiary. *Mims*, 513 So. 2d at 1121. Miller and Hobbs both filed declarations that the proceedings were adversarial and served their declarations on all parties, including Mims. *Id.*

Mims, however, failed to file a response and a default

judgment was entered against her. Mims first learned that a default judgment had been entered against her at the hearing on the motion for partial final judgment. Upon learning of the default, Mims moved ore tenus[3] to vacate and to continue the hearing. *Mims*, 513 So. 2d at 1121. The court continued the hearing, granting Mims additional time to file a motion to vacate. In her motion, Mims argued that she had been in contact with either Hobbs or his attorney during the pendency of the proceeding, and she believed they were representing her interests in the matter. Attached to Mims' motion was her answer to the petition. The Florida Court of Appeals upheld the vacation of the default judgment, finding that Mims' failure to file a response was excusable neglect because Mims reasonably believed that the personal representative was protecting her interest. *Id.*

Although *Mims* is analogous to the present case, it is not persuasive because it is factually distinguishable. In *Mims*, the beneficiary had been in contact with the personal representative and/or his attorney during the pendency of the proceeding. *Id.* Unlike Mims, Curtis had not made contact with either Knight or her attorney and, thus, could not reasonably believe they were representing her interests. In addition, Curtis had been notified that there was a dispute over whether Knight had resigned as trustee. Because it was unclear whether Knight was a cotrustee, it was unreasonable for Curtis to believe that Knight represented her interests.

Further, upon learning at the hearing on the motion for final judgment that a default judgment had been entered against her, Mims immediately moved ore tenus to vacate and continue the hearing. In her motion to vacate, Mims also attached her answer to the petition. Here, the court entered the order of default against Curtis on July 21, 1997, but Curtis did not move to vacate that order until October 9, 1997. Furthermore, Curtis has never attempted to file a

---

[3]"By spoken word, orally." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1589 (1966).

response to the petition. As the trial court had reasonable grounds to find there was no excusable neglect, it did not abuse its discretion.

Due Diligence

The second factor considered under the "good cause" standard requires a showing of due diligence in making an appearance after the court enters the order of default. *Seek*, 63 Wn. App. at 271. Here, the trial court made no finding as to whether Curtis acted with due diligence because it already had determined that there was no excusable neglect. As there was no excusable neglect, we need not determine whether Curtis acted with due diligence.

■ Nevertheless, it is apparent that Curtis fails to demonstrate due diligence. Here, Curtis did nothing to set aside the order of default until almost three months after its entry. On July 9, 1997, Bob Stevens and Rita Stevens notified Curtis that they would seek an order of default against her. After, Curtis failed to respond to two notices, the trial court entered an order of default on July 21, 1997. Curtis was given notice of the default entry, but took no action until September 25, 1997, when she filed a notice of appearance and request for special notice.

On October 3, 1997, Rita Stevens and Bob Stevens sent Curtis' attorneys notice of their motion to enter Findings of Fact and Conclusions of Law, and Stipulated [ ] Default Judgment. At this point, Curtis moved to vacate the order of default—80 days after the order of default was entered. Curtis has provided no case law in support of her argument that Curtis acted with due diligence. As there was no excusable neglect and three months is not within a reasonable time to respond to an order of default, the trial court did not abuse its discretion in denying Curtis' motion to vacate. *See Cammarano*, 99 Wash. at 361 (holding that defendant acted with due diligence when he moved to vacate the following day); *Hardesty v. Stenchever*, 82 Wn. App. 253, 257, 917 P.2d 577 (seven days), *review denied*, 130 Wn.2d 1005

(1996); *Canam Hambro Sys., Inc.*, 33 Wn. App. at 453 (23 days).

Findings of Fact and Conclusions of Law

Curtis further contends that the settlement agreement is not enforceable because it violates RCW 11.96.170. RCW 11.96.170 provides a means for nonjudicial resolution of disputes and requires that nonjudicial settlements be in writing and signed by all required parties. The required parties are those who would be entitled to notice if the issue were the subject of a judicial proceeding. *See* RCW 11.96.170. Curtis asserts that the trial court erred by failing to resolve the legal dispute raised by Knight's response, and by failing to require that the defaulted parties be given notice of the proposed settlement agreement.

Here, however, Rita Stevens and Bob Stevens brought this dispute before the court under RCW 11.96.080. Therefore, RCW 11.96.170 is not applicable. Nevertheless, under either statute, a party who has had an order of default entered against the party "cannot contest the subsequent proceedings and is not entitled to further notice thereof." *C. Rhyne & Assocs. v. Swanson*, 41 Wn. App. 323, 326, 704 P.2d 164 (1985) (quoting *Pedersen v. Klinkert*, 56 Wn.2d 313, 320, 352 P.2d 1025 (1960)). As Curtis had been defaulted out of the judicial proceeding, she was not entitled to judicial notice of the settlement agreement. Because Curtis is a party in default, she cannot contest the later proceedings. *Rhyne*, 41 Wn. App. at 326.

Procedural Due Process

Curtis further asserts that she was deprived of her right to procedural due process because Knight failed to notify Curtis of her intention to enter into a settlement agreement. Citing *Esmieu v. Schrag*, 15 Wn. App. 260, 265, 548 P.2d 581 (1976), *aff'd*, 88 Wn.2d 490 (1977), Curtis argues that the trial court's judgment on the petition for interpleader and declaratory relief is void because it does not comport with procedural due process.

As indicated above, however, because Curtis was already adjudged in default, she was not entitled to notice of the settlement agreement. Because Curtis was not entitled to notice of the settlement agreement, the trial court's judgment on the petition for interpleader and declaratory relief did not violate Curtis' right to procedural due process.

Furthermore, *Esmieu* is distinguishable. There, the court ordered the trustees to provide notice to the beneficiaries that the court would take testimonial and documentary evidence in order to construe the trust document. *Esmieu*, 15 Wn. App. at 265. But the trustees in *Esmieu* neither informed the beneficiaries that the court would take testimony nor that a hearing would be conducted. Here, Rita Stevens and Bob Stevens notified all the beneficiaries of the hearing on May 19, 1997, and that a default judgment would be entered against them if they failed to respond. Some of the beneficiaries, including Curtis, chose not to respond and a default judgment was entered against them. The remaining beneficiaries elected to settle the dispute rather than litigate. As Curtis was provided with notice and an opportunity to be heard, the trial court's judgment on the petition for interpleader and declaratory relief did not violate Curtis' right to procedural due process.

Attorney Fees

 Finally, both the respondents and Curtis contend they are entitled to attorney fees. Respondents claim fees under RAP 18.1(b)[4] and RCW 11.96.140. Curtis requests fees under RCW 11.96.140. According to that statute, the appellate court "may, in its discretion, order costs, including attorneys' fees, to be paid by any party . . . as justice may require." RCW 11.96.140. But, "[t]he issue whether attorneys fees should be awarded at all, and if so in what

---

[4]RAP 18.1(b) provides: "The party must devote a section of the brief to the request for the fees or expenses. The request should not be made in the cost bill. In a motion on the merits pursuant to rule 18.14, the request and supporting argument must be included in the motion if the requesting party has not yet filed a brief."

38

amount, must await final resolution of the issue." *In re Estate of Stockman*, 59 Wn. App. 711, 715, 800 P.2d 1141 (1990). We decline to award attorney fees to any party.

Affirmed.

SEINFELD and BRIDGEWATER, JJ., concur.