# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| INNA MEDNIKOVA and VYACHESLAV AVADAYEV, | ) ) ) | No. 70863-5-I |
| | ) | DIVISION ONE |
| Respondents, | ) ) | |
| v. | ) ) | |
| MARE MORSE and MARTIN MORSE, | ) ) | UNPUBLISHED |
| Appellants. | ) ) ) | FILED: <u>August 18, 2014</u> |

2014 AUG 18 AM 9:48 COURT OF APPEALS DIV I STATE OF WASHINGTON

COX, J. — Mare and Martin Morse (collectively "Morse") appeal the trial court's order denying her motion to set aside an order of default. Morse also appeals the trial court's order of default judgment, findings of fact and conclusions of law, and the order denying her motion for reconsideration.

Morse contends that the trial court abused its discretion when it did not set aside the order of default or vacate the default judgment based on the fact that she believed her insurance company would respond to the summons and complaint. She also asserts that the default judgment is not supported by substantial evidence.

The decision on a motion to set aside an order of default lies within the sound discretion of the trial court.[1] Likewise, whether to vacate a default judgment is also left to the sound discretion of the court.[2] A trial court's decision will not be disturbed unless it plainly appears such discretion has been abused.[3] "The reasonability of the damage award is a question of fact reviewed for abuse of discretion."[4] Here, Mare Morse fails in her burden to show that the trial court abused its discretion in any respect. We affirm.

On May 11, 2010, Morse caused an automobile collision which resulted in injuries to Inna Mednikova. Omni Insurance, Morse's insurer, conducted settlement negotiations with Mednikova's attorney from 2010 to 2013. The negotiations were not successful.

As the three-year statute of limitations approached, Mednikova commenced this action on May 7, 2013 by filing a summons and complaint. The next day, a process server personally served Morse with copies of these documents.

Morse failed to respond to the summons and complaint within the 20-day period following service on May 8, 2013. In her declaration, she testified that she did not "personally take any action after receiving the paperwork."

---

[1] In re Estate of Stevens, 94 Wn. App. 20, 29, 971 P.2d 58 (1999).

[2] White v. Holm, 73 Wn.2d 348, 351, 438 P.2d 581 (1968).

[3] Id.

[4] Aecon Bldgs., Inc. v. Vandermolen Constr. Co., Inc., 155 Wn. App. 733, 742, 230 P.3d 594 (2009).

Mednikova moved for an order of default, which the court granted on May 31, 2013.

This record reflects that Omni Insurance, Morse's insurer, "first became aware that its insured, Mare Morse, had been served with the Summons and Complaint on or about June 13, 2013." Other than Morse's admission that she took no action after being served, there is nothing in this record to explain what happened between the May 8 date of service and the June 13 date on which Omni Insurance became aware of service on its insured.

Omni Insurance then retained counsel for Morse, who filed a notice of appearance on June 21. Thereafter, Morse moved to set aside the order of default. At the hearing on this motion, the trial court also considered Mednikova's motion for entry of a default judgment against Morse.

The trial court denied Morse's motion to set aside the order of default. It also entered a default judgment together with findings of fact and conclusions of law. Morse moved for reconsideration of these orders, which the trial court denied.

Morse appeals.

## ORDER OF DEFAULT

Morse argues that the trial court abused its discretion when it denied her motion to set aside the order of default. Because she failed to establish good cause, we disagree.

The decision on a motion to set aside an order of default lies within the sound discretion of the trial court.[5] "That decision will not be reversed on appeal unless it plainly appears that the trial court abused its discretion."[6] A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons.[7]

Under CR 55, "If the defendant fails to appear, the plaintiff first obtains an order finding the defendant to be in default, and then obtains a default judgment."[8] "An order (or more accurately, a finding) of default is the official recognition that a party is in default, and is a prerequisite to the entry of judgment on that default."[9]

Under CR 55(c)(1), a court may set aside an order of default upon a showing of good cause. To show good cause under this rule, a party may demonstrate excusable neglect and due diligence.[10]

Here, it is undisputed that Mednikova properly served Morse. It is also undisputed that Morse did nothing with the summons and complaint after service.

---

[5] Stevens, 94 Wn. App. at 29.

[6] Id.

[7] Id.

[8] 14 KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 9:23 (2d ed. 2013).

[9] 4 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE CR 55 author's cmts. (6th ed. 2013).

[10] Stevens, 94 Wn. App. at 30.

Her declaration states that she "did not personally take *any* action after receiving the paperwork." This is the record that was before the trial court to determine whether Morse met the burden of establishing good cause.

Morse argues that the trial court abused its discretion when it rejected her argument that there was good cause to set aside the order of default. She asserts that her failure to appear was based upon excusable neglect and that she was diligent in asking for relief from the order of default. If we determine there was no excusable neglect, we need not consider whether she was diligent in seeking relief.[11]

In her declaration supporting the motion to set aside the order of default, Morse gave two reasons why she did not take any action after service of the summons and complaint. First, she asserts the process server told her that she "need not worry about [the documents]" because they were "only for a 'tort.'" This makes no sense. The plain language of the summons requires an answer to the complaint within 20 days of service. Why Morse would ignore this plain language based on the alleged representation of a process server is left unexplained. The trial court was reasonably entitled to reject this excuse as not establishing good cause.

We also note that Mednikova submitted a declaration from the process server, which stated that he "never" tells any defendants that they should not worry about the documents he serves. The trial court was also reasonably

---

[11] See id.

entitled to believe the process server and disbelieve Morse to support its rejection of this first excuse.

Second, Morse contends that she did not take any action because her insurance company was handling the claim. Thus, she believed that the insurance company would "continue to act on [her] behalf and to protect [her] interests." This excuse is also not persuasive. Why Morse would fail to do anything with the summons and complaint after service and think her insurer would not need to know about service is also left unexplained. If anything, providing the insurer with this new information would seem the more probable course in view of the fact that it was then acting on her behalf. The trial court was reasonably entitled to reject this excuse as lacking good cause.

In Johnson v. Cash Store, Division Three reached a similar conclusion regarding the entry of a default judgment.[12] There, the Cash Store's manager was personally served with a summons and complaint.[13] "Because she thought the documents were irrelevant to Cash Store business, [the manager] explained, she never informed the company's administration or its legal counsel that she had received them."[14] The manager also did not respond to the notice of the default hearing, and there was nothing in the record to explain what she did with that notice.[15]

---

[12] 116 Wn. App. 833, 848-49, 68 P.3d 1099 (2003).

[13] Id. at 839.

[14] Id. at 848.

[15] Id.

6

The court explained that the manager's "failure to forward the summons and complaint to corporate counsel or to the . . . administration—and her unexplained failure to forward the notice of the default hearing—constituted at least inexcusable neglect, if not willful noncompliance."[16] The court concluded that the trial court did not abuse its discretion when it denied Cash Store's motion to vacate the default judgment.[17]

Like Cash Store, Morse's failure to forward the summons and complaint to her insurance company amounted to inexcusable neglect. The trial court did not abuse its discretion when it rejected this excuse as lacking good cause.

The cases on which Morse relies to argue good cause are distinguishable because the defendants in those cases showed that there was a misunderstanding as opposed to the inexcusable neglect in this case.

In Norton v. Brown, Division Three explained that "[a] genuine misunderstanding between an insured and his insurer as to who is responsible for answering the summons and complaint will constitute a mistake for purposes of vacating a default judgment."[18] This principle has been stated in a number of other cases.[19]

---

[16] Id. at 848-49.

[17] Id. at 849.

[18] 99 Wn. App. 118, 124, 992 P.2d 1019 (1999) (emphasis added).

[19] See Akhavuz v. Moody, 178 Wn. App. 526, 538, 315 P.3d 572 (2013); Gutz v. Johnson, 128 Wn. App. 901, 919, 117 P.3d 390 (2005); Berger v. Dishman Dodge, Inc., 50 Wn. App. 309, 312, 748 P.2d 241 (1987); Calhoun v. Merritt, 46 Wn. App. 616, 621, 731 P.2d 1094 (1986).

7

In Norton, the court concluded that the defendant's failure to respond to a summons and complaint was excusable neglect.[20] The court explained:

> [The defendant] was under the impression that his interests were being protected by his insurer through settlement negotiations. *His insurer did not warn [the defendant] that a lawsuit was being commenced or that he should expect service of a summons and complaint and that the paperwork should be immediately forwarded to the insurer.* The court concluded that [the defendant] was confused about what to do with the summons and complaint. This was a mistake on the part of the insurer and excusable neglect on the part of [the defendant].[21]

In Calhoun v. Merritt, a case that Norton cites, Division Three also concluded that a misunderstanding between an insured and insurer about what to do with a summons and complaint "constituted a bona fide mistake."[22] The court explained:

> As stated in [the defendant's] affidavit, the fact that his insurer was already involved in the case and dealing with [the plaintiff's] attorney caused him to believe that the insurer knew of the lawsuit and would respond to it. *While [the insurance adjuster] advised [the defendant] to expect service, there is no indication that he told him what to do once service occurred.*[23]

Here, unlike Norton and Calhoun, Morse's declaration does not explain what the insurance company told or did not tell her about the possibility of being served with a summons and complaint.[24] There is simply nothing in the record to

---

[20] Norton, 99 Wn. App. at 124.

[21] Id. (emphasis added).

[22] 46 Wn. App. 616, 621, 731 P.2d 1094 (1986).

[23] Id. (emphasis added).

[24] See Norton, 99 Wn. App. at 124; Calhoun, 46 Wn. App. at 621.

determine whether there was any genuine misunderstanding between the insured and insurer. More importantly, the trial court was reasonably entitled to conclude that Morse's failure to forward the summons and complaint to her insurance company was inexcusable neglect for the reasons already discussed.[25]

Additionally, Norton and Calhoun can be traced back to the supreme court case, White v. Holm, which is also distinguishable from this case.[26]

In White, the supreme court held that the trial court abused its discretion when it denied the defendant's motion to vacate the default judgment entered against him.[27]

There, the defendant failed to appear because there was a misunderstanding about who would represent the defendant until insurance coverage was determined.[28] The defendant believed that the insurance company would appear on his behalf, but the insurance company believed that a personal attorney would represent the defendant.[29] Notably, the defendant had been in communication with the insurance company and "immediately relayed"

---

[25] See Cash Store, 116 Wn. App. at 848-49.

[26] Norton, 99 Wn. App. at 125 (citing Calhoun, 46 Wn. App. at 621); Calhoun, 46 Wn. App. at 621 (citing White v. Holm, 73 Wn.2d 348, 438 P.2d 581 (1968)).

[27] White, 73 Wn.2d at 357.

[28] Id. at 349-50.

[29] Id.

the summons and complaint to the insurance adjuster.[30] The court concluded that vacation of the default judgment was warranted because there was a "bona fide mistake, inadvertence, and surprise" given the misunderstanding.[31]

Here, unlike White, Morse did not take any action after receiving the legal papers.[32] There is no showing here of a "bona fide mistake, inadvertence, [or] surprise."[33] Thus, the trial court was well within its discretion when it concluded that there was no good cause to set aside the order of default.

Morse argues that Mednikova's attorney failed to make the insurance company aware of the lawsuit despite two years of communications and that Mednikova's attorney purposefully evaded communication with the insurance company. As to the first point, there was no duty of counsel that we know of to separately advise the insurer of the lawsuit. Service on the insured was sufficient. As to the second point, even if this assertion is true (and we make no determination of this point), the proper inquiry is whether Morse's failure to appear was excusable neglect. This inquiry is focused on Morse's actions, not the actions of other persons.[34] There is simply no showing that counsel's actions had any impact on Morse's decision to ignore service of process.

---

[30] Id. at 350.

[31] Id. at 355.

[32] See id. at 349-50.

[33] Id. at 355.

[34] See Norton, 99 Wn. App. at 125 ("As mentioned above, a review of the transcript of the court's oral decision on reconsideration makes it clear that the court focused more on the insurance company's failure to contact [the defendant]

10

To support the assertion that other persons' actions are relevant, Morse cites Morin v. Burris.[35] But that case is distinguishable and does not control.

There, the plaintiff served the defendant with a summons and complaint after they were involved in a motor vehicle collision and could not reach a settlement.[36] The defendant promptly informed his insurance company about the papers, and he assumed that the insurance company would take care of the suit.[37] When the insurance company contacted the plaintiff's attorney, the attorney's paralegal did not inform the insurance company that the plaintiff had obtained an order of default.[38]

The supreme court explained, "If the [defendant's] representative acted with diligence, and the failure to appear was induced by [plaintiff's] counsel's efforts to conceal the existence of litigation under the limited circumstances we have described above, then the [defendant's] failure to appear was excusable

---

than it did on any excusable neglect on [the defendant's] part. Because the case law does not support the trial court's conclusion, this was an abuse of discretion.").

[35] Brief of Appellant at 12-13 (citing Morin v. Burris, 160 Wn.2d 745, 161 P.3d 956 (2007)).

[36] Morin, 160 Wn.2d at 751.

[37] Id.

[38] Id.

under equity and CR 60."[39] Because the trial court had not considered this issue, the supreme court remanded the case for further consideration.[40]

That case is factually distinguishable from this case because there is no showing that Morse promptly contacted her insurance company after she was served with the summons and complaint. She admits she did nothing with those papers. Additionally, Mednikova's attorney did not directly communicate with Morse's insurance company and lead it to believe that Mednikova had not already obtained an order of default. Thus, Morin has no bearing on this case.

The order of default stands.

## DEFAULT JUDGMENT

Morse next argues that the default judgment should not have been entered because the order of default is unenforceable. For the reasons we previously discussed in this opinion, the order of default was properly entered. It stands because the trial court did not abuse its discretion when it concluded that there was no good cause to vacate it.

Morse also asserts that the default judgment should be vacated under CR 60(b)(1) and White. We disagree.

Default judgments are generally disfavored because the law favors determination of controversies on their merits.[41] "'But we also value an

---

[39] Id. at 759.

[40] Id.

[41] Akhavuz, 178 Wn. App. at 532.

organized, responsive, and responsible judicial system where litigants acknowledge the jurisdiction of the court to decide their cases and comply with court rules.'"[42] "When balancing these competing policies, the fundamental principle is whether or not justice is being done."[43]

An appellate court will not reverse the trial court's decision on a motion to vacate a default judgment unless "an abuse of discretion clearly appears."[44] Under White, a trial court must consider four factors when exercising its discretion.[45]

> The primary factors are: (1) the existence of substantial evidence to support, at least prima facie, a defense to the claim asserted; (2) the reason for the party's failure to timely appear, i.e., whether it was the result of mistake, inadvertence, surprise or excusable neglect. The secondary factors are: (3) the party's diligence in asking for relief following notice of the entry of the default; and (4) the effect of vacating the judgment on the opposing party.[46]

"These factors vary in dispositive significance."[47] If a defendant has a strong defense, the other factors are not as significant.[48] "But if the party can show only

---

[42] Id. (quoting Little v. King, 160 Wn.2d 696, 703, 161 P.3d 345 (2007)); see also Morin, 160 Wn.2d at 759 ("[W]hen served with a summons and complaint, a party must appear. There must be some potential cost to encourage parties to acknowledge the court's jurisdiction.").

[43] Akhavuz, 178 Wn. App. at 532.

[44] Calhoun, 46 Wn. App. at 619.

[45] Id. (citing White, 73 Wn.2d at 352).

[46] Id. (citing White, 73 Wn.2d at 352).

[47] Id.

[48] Id.

a minimal prima facie defense, the court will scrutinize the other considerations more carefully."[49]

For the first factor, Morse argues that she established a prima facie defense with respect to damages. She does not argue that she has a defense to liability. Morse cites Calhoun to support her argument regarding her defense to damages.[50]

There, Division Three explained that it is difficult to establish a prima facie defense to damages without the ability to conduct discovery.[51] "Moreover, presenting a defense to damages for pain and suffering is always complicated by the subjective as opposed to objective nature of such damages."[52] The court concluded that it was "inequitable and unjust to deny the motion to vacate the damage portion of the judgment on the ground that [the defendant] did not present a prima facie defense."[53] Consequently, the court looked to the other three factors set out in White.[54]

Because Morse asserts that she has a defense to damages, like Calhoun, we also look to the other three factors. Here, Morse's failure to establish the

---

[49] Id.

[50] Brief of Appellants at 20-21 (citing Calhoun, 46 Wn. App. at 620-21).

[51] Calhoun, 46 Wn. App. at 620.

[52] Id.

[53] Id. at 620-21.

[54] Id. at 621.

second factor is dispositive.[55] For the second factor, Morse fails to establish that her untimely appearance was the result of mistake, inadvertence, surprise, or excusable neglect for the reasons already discussed.

Even if Morse can establish the third and fourth factors—that she was diligent in asking for relief following notice of the entry of default and that Mednikova would not suffer a substantial hardship if the default judgment was vacated—these secondary factors do not outweigh her failure to establish the second factor, which is a primary factor.

Given Morse's failure to establish the second factor, a primary factor, the trial court did not abuse its discretion when it declined to vacate the default judgment.

## SUBSTANTIAL EVIDENCE

Morse separately claims that the default judgment is not supported by substantial evidence. We disagree.

As an initial matter and as previously noted, Morse expressly admitted to the trial court that she does not have a defense to liability. In her response to Mednikova's motion to enter a default judgment, Morse stated, "*While Defendant Mare Morse does not have a* prima facie *defense as to liability for causing the motor vehicle accident*, [Morse does] have a defense to the damages being asserted."[56] In Morse's CR 59 motion for reconsideration, the

---

[55] See Akhavuz, 178 Wn. App. at 540 (explaining that "[i]nexcusable neglect is the dispositive factor that should have guided the trial court to deny the motion to vacate").

[56] Clerk's Papers at 92 (emphasis added).

primary focus of her assertions was that she has a defense to damages, not liability.

Given these prior admissions regarding liability, Morse does not have a defense to liability. Having presented no defense, the default judgment regarding liability must stand.[57]

The issue is whether the damages portion of the judgment is supported by substantial evidence.

Under CR 55(b)(2), a default judgment may be entered after an order of default as follows:

> "*When Amount Uncertain.* If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings as are deemed necessary or, when required by statute, shall have such matters resolved by a jury. Findings of fact and conclusions of law are required under this subsection."[58]

"[F]ollowing default, the trial court must conduct a reasonable inquiry to determine the amount of damages."[59] "The reasonability of the damage award is a question of fact reviewed for abuse of discretion."[60]

---

[57] See Little, 160 Wn.2d at 704.

[58] Shepard Ambulance, Inc. v. Helsell, Fetterman, Martin, Todd & Hokanson, 95 Wn. App. 231, 240, 974 P.2d 1275 (1999) (quoting CR 55(b)(2)).

[59] Smith v. Behr Process Corp., 113 Wn. App. 306, 333, 54 P.3d 665 (2002) (citing CR 55(b)(2)).

[60] Aecon Bldgs., 155 Wn. App. at 742.

In <u>Shepard Ambulance, Inc. v. Helsell, Fetterman, Martin, Todd &</u>
<u>Hokanson</u>, this court explained that a trial court has "discretion to vacate the
damages portion of a default judgment even where no meritorious defense [to
liability] is established."[61] That case involved a legal malpractice claim against
the defendant's law firm for failing to timely file a motion to vacate a default
judgment.[62]

This court explained that the "standard for when to vacate damages
awards from default judgments is the same as the standard for setting aside
awards of damages from trials."[63] "'Thus, the default award here could be
vacated if there were not substantial evidence to support the award of
damages.'"[64] "Evidence is substantial if it is sufficient to persuade a fair-minded,
rational person of the truth of the declared premise."[65]

Here, the trial court awarded the following damages:

. . .

3. Medical Bills: $15,063.47

4. Lost Wages: $1,204

5. Pain and Suffering: $28,000

---

[61] 95 Wn. App. 231, 241, 974 P.2d 1275 (1999).

[62] <u>Id.</u> at 237.

[63] <u>Fowler v. Johnson</u>, 167 Wn. App. 596, 606, 273 P.3d 1042 (2012)
(citing <u>Shepard</u>, 95 Wn. App. at 241-42).

[64] <u>Id.</u> (quoting <u>Shepard</u>, 95 Wn. App. at 242).

[65] <u>Shepard</u>, 95 Wn. App. at 242.

17

6. Loss of Consortium and Loss of Services: $14,000

7. Other Recovery (towing): $241.00

8. Principal Judgment Amount: $58,508.47[66]

The medical bills show that they support that award. Mednikova submitted a letter from her employer, which supports the lost wages award. She also submitted a towing bill, which supports "other recovery." We take that to support the towing charge.

For the pain and suffering and loss of consortium and loss of service awards, Mednikova submitted a declaration that states:

> My family life suffered as well. I am a wife, a mother, and a grandmother to a three-year-old granddaughter. For many months after the accident, I was unable to cook for my family, clean the house, grocery shop and perform other household duties. I could not take care of my granddaughter—it was very hard to not be able to play with her. Not only did my husband have to do all of our household chores for months, but he also suffered from my inability to perform my spousal duties for quite a long time. I am an avid dancer. I love to take long walks. Prior to the accident, I used to take 1 to 2 hour walks almost every day. For a long time after the accident I was not able to continue with these activities, and even now I can't walk for long periods of time. My dancing suffered as well. Being in a car accident has interrupted the normal course of my life and caused me a lot of pain as well as financial and other problems. I believe that I am entitled to a fair compensation by the people who caused my accident.[67]

The determination of an award for pain and suffering and loss of consortium and loss of services is highly subjective.[68] But, as counsel properly conceded at oral

---

[66] Clerk's Papers at 235.

[67] Id. at 61.

[68] See Calhoun, 46 Wn. App. at 620.

argument of this case, there need not be a specification of the amount of damages sought for recovery for pain and suffering. Given the amount awarded here and Mednikova's declaration, we conclude that the pain and suffering award was reasonable.

Morse cites no authority that the awards in this case are excessive. Rather, Morse contends that there is no evidence to support the pain and suffering and the loss of consortium and loss of services award. But, as previously discussed, Mednikova submitted a declaration to support these awards. Thus, the assertion that there was no evidence to support these awards is incorrect.

Morse also asserts that there is no evidence to support the fact that Mednikova is legally married and thus entitled to a loss of consortium award. But as Mednikova correctly points out, Morse did not make this specific argument to the trial court. Thus, the argument was not preserved for appeal.

Finally, Morse argues that there is not substantial evidence to support the medical bills and lost wages award. She contends that the bills are unauthenticated, and there is no evidence to prove the "reasonableness and necessity" of the bills. Further, she asserts that the letter from Mednikova's employer is not convincing because it does not state the reason for her absence. But these arguments go to the weight of the evidence, not its admissibility. The evidence is substantial "if it is sufficient to persuade a fair-minded, rational

person of the truth of the declared premise."[69] As previously discussed, the evidence meets this standard for those awards.

In sum, there is substantial evidence to support the amount of damages awarded. The trial court did not abuse its discretion in entering judgment for these amounts.

## ATTORNEY FEES

Mednikova requests an award of her reasonable attorney fees and costs associated with this appeal pursuant to RAP 18.1. But Mednikova provides no legal basis for awarding attorney fees. Thus, we deny her request.

Costs are awarded to the prevailing party, subject to compliance with the RAPs.

We affirm the judgment and deny the request for an award of attorney fees.

Cox, J.

WE CONCUR:

---

[69] Shepard, 95 Wn. App. at 242.