IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DANA AKHAVUZ and HASAN AKHAVUZ, a married couple, | ) ) ) | No. 69234-8-I |
| Appellants, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| TRACY ARNOLD MOODY and JOHN DOE MOODY d/b/a STUDIO SEVEN, and SEVEN ENTERTAINMENT, INC., a Washington corporation, | ) ) ) ) ) | PUBLISHED OPINION FILED: December 23, 2013 |
| Respondents. | ) ) ) | |

BECKER, J. — At issue is an order vacating a default judgment almost a year after it was entered. The motion to vacate should have been denied because the insurer and defense counsel who failed to respond to the complaint offered no excuse for the long delay. There is no "innocent insured" doctrine that allows an insurer to escape responsibility by keeping its insured unaware that the matter is being neglected.

BACKGROUND

Studio Seven, a heavy metal nightclub in Seattle, held a party on Halloween night in 2010. Appellant Dana Akhavuz claims she attended the party

at Studio Seven and slipped and fell on fake blood that the performers were using. Akhavuz had to undergo surgery for a broken ankle under general anesthesia. A hairdresser, she was unable to work for months.

According to a declaration she filed in connection with the default judgment proceedings, Akhavuz called Studio Seven in November and December 2010 to discuss her injuries and obtain information about the club's insurance carrier. Akhavuz says the club's manager, Nicole Russell, was hostile and refused to provide information about the insurer. Akhavuz and her husband then retained attorney Pellegrino Certa.

Certa wrote to Studio Seven in January 2011, asking the club to tender the claim to its insurer and to acknowledge receipt. Certa's letter said that once Studio Seven provided the insurer's information, "we will deal directly with your insurer regarding this claim."

On February 4, 2011, Studio Seven faxed Certa's letter to its insurer, Founders Insurance Company. Russell and club owner Tracy Moody say in their declarations that they provided information to Founders to assist in an investigation, including a list of potential witnesses. Neither Founders nor Studio Seven responded to Certa's letter.

Akhavuz filed a personal injury suit against Studio Seven in May 2011. She named Moody and his company, Seven Entertainment, Inc., as defendants. Moody was served with the summons and complaint, discovery requests, and a trial schedule on May 24, and his company was served 2 days later. Under Civil

Rule 4, the defendants had 20 days after the service of summons to appear and answer the complaint.

On May 25, 2011, Moody faxed the summons and complaint to Carlos Ortiz, an insurance adjuster at Founders. On May 27, Ortiz contacted attorney Certa and asked that Akhavuz submit a demand package to Founders. On June 13, Certa responded with Akhavuz's offer to settle the claim for $195,000. The letter said the settlement offer would remain open for 30 days. Ortiz did not respond to the settlement offer. And the defendants did not appear or answer.

On June 16, 2011, three days after sending the demand letter, Akhavuz filed a motion for default against Studio Seven. The court entered an order of default the next day. On June 28, Akhavuz obtained a default judgment for $433,046.58, including costs and statutory attorney fees.

Akhavuz heard nothing further from Studio Seven or its insurer until five months later.

In November 2011, Ortiz, the claims adjuster for Founders, checked the trial docket online and saw the order of default. Upon this discovery, Founders retained Lane Powell attorney Barry Mesher as counsel for Studio Seven. Mesher obtained a copy of all the pleadings and retained an investigator to evaluate the allegations in the complaint.

On November 16, 2011, Mesher called Certa. According to Certa, Mesher indicated the defendants were aware of the default judgment and were considering whether settlement was feasible or whether they would move to vacate the default judgment. On November 25, Certa followed up this

conversation with an e-mail to Mesher in which he asked Mesher to let him know Moody's intentions.

Certa did not hear back from Mesher until March 8, 2012, when Mesher called him to request a settlement conference. According to Certa, he and Mesher agreed to meet on March 14. But on the morning of March 14, Certa received a message that Mesher would be unable to attend the meeting.

In June 2012, Mesher left Lane Powell and became a shareholder at another firm.

On June 8, 2012, Lane Powell attorneys Gabriel Baker and Jennifer Sheffield took over Studio Seven's defense. They reviewed the investigator's report, obtained witness declarations, and spoke with Moody. According to Moody, this was the first notice he had that a default judgment had been entered against him. (Neither Moody nor defense counsel have commented on the November 2011 phone call in which Mesher allegedly told Certa that the defendants were aware of the judgment.)

On June 13, 2012, Baker called Certa to ask that Akhavuz agree to vacate the default judgment. This was the first time Certa had heard from any representative of Studio Seven since March, when Mesher cancelled the settlement conference. Akhavuz did not agree to vacate the judgment.

On June 27, 2012, the defendants filed a motion to vacate the default judgment that had been entered on June 28, 2011. Under Civil Rule 60(b), a court may relieve a party from a final judgment, but a motion to vacate must be made within a reasonable time, and if on grounds of mistake, inadvertence,

surprise, or excusable neglect, "not more than 1 year after the judgment, order, or proceeding was entered." The defendants filed their motion with one day to spare. They argued the judgment should be vacated "so that Studio Seven is not unfairly penalized for its insurer's handling of this matter."

On July 25, 2012, after hearing argument and considering the factors identified in White v. Holm, 73 Wn.2d 348, 438 P.2d 581 (1968), the trial court vacated the default judgment and reset the matter for trial.

Akhavuz appeals.

## DISCUSSION

This court reviews a ruling on a motion to vacate a default judgment for abuse of discretion. Morin v. Burris, 160 Wn.2d 745, 753, 161 P.3d 956 (2007). A court abuses its discretion only when its decision is manifestly unreasonable or based on untenable grounds. Showalter v. Wild Oats, 124 Wn. App. 506, 510, 101 P.3d 867 (2004). Default judgments are "generally disfavored in Washington based on an overriding policy which prefers that parties resolve their disputes on the merits." Showalter, 124 Wn. App. at 510. "But we also value an organized, responsive, and responsible judicial system where litigants acknowledge the jurisdiction of the court to decide their cases and comply with court rules." Little v. King, 160 Wn.2d 696, 703, 161 P.3d 345 (2007). When balancing these competing policies, the fundamental principle is whether or not justice is being done. Griggs v. Averbeck Realty, Inc., 92 Wn.2d 576, 582, 599 P.2d 1289 (1979).

A party against whom a default judgment has been entered may move for vacation of the judgment pursuant to CR 60. The trial court's discretion in deciding whether to set aside a default judgment revolves around two primary and two secondary factors first articulated in White. These factors are: (1) there is substantial evidence to support at least a prima facie defense; (2) the failure to timely appear and answer was due to mistake, inadvertence, surprise, or excusable neglect; (3) the moving party acted with due diligence after notice of the default judgment; and (4) no substantial hardship will result to the opposing party. White, 73 Wn.2d at 352.

The first two factors are primary; factors three and four are secondary:

> The first two are the major elements to be demonstrated by the moving party, and they, coupled with the secondary factors, vary in dispositive significance as the circumstances of the particular case dictate. Thus, where the moving party is able to demonstrate a strong or virtually conclusive defense to the opponent's claim, scant time will be spent inquiring into the reasons which occasioned entry of the default, provided the moving party is timely with his application and the failure to properly appear in the action in the first instance was not willful. On the other hand, where the moving party is unable to show a strong or conclusive defense, but is able to properly demonstrate a defense that would, prima facie at least, carry a decisive issue to the finder of the facts in a trial on the merits, the reasons for his failure to timely appear in the action before the default will be scrutinized with greater care, as will the seasonability of his application and the element of potential hardship on the opposing party.

White, 73 Wn.2d at 352-53.

*Evidence of a Defense*

Here, the trial court ruled Studio Seven had a defense to Akhavuz's claims. It is not clear whether the court deemed the defense virtually conclusive

6

or merely a prima facie defense. Studio Seven argued primarily that Akhavuz could not show the club or its owner had actual or constructive notice of the fake blood that allegedly caused her fall, as required in premises liability cases like Wiltse v. Albertson's, Inc., 116 Wn.2d 452, 805 P.2d 793 (1991). Studio Seven also offered club manager Russell's declaration, stating that a floor supervisor routinely inspects the premises for any debris, spills, or other hazards, and the declaration of an employee who reported that a "5 feet and one inch tall, white, over-weight" woman said she had fallen *outside* the premises.

Akhavuz responded that Russell's comments about regular maintenance practices did not address the critical issue of the maintenance and inspection efforts that night. Akhavuz asserted she did not meet the physical description of the patron the employee described as having fallen outside the club, so there was no genuine dispute as to the location of her fall. Akhavuz reasoned she had proven actual notice because Studio Seven's own promotional flyers indicated they were aware the performers would be using fake blood. Studio Seven conceded it was aware the band "Spiderface" used fake blood on stage, but understood the band "does not spray the fake blood into the general public areas."

Based on this record, we conclude Studio Seven did not present a conclusive defense, but rather a prima facie defense sufficient to carry the issue of liability to trial. See White, 73 Wn.2d at 353; see also Berger v. Dishman Dodge, Inc., 50 Wn. App. 309, 311, 748 P.2d 241 (1987) (prima facie defense

established by unchallenged findings that defendant dealership regularly removed snow and ice from the viewing lot where customer slipped).

*Mistake, Inadvertence, or Excusable Neglect*

Where a defendant is unable to show a conclusive defense, "the plausibility and excusability of the defaulted defendants' reason for failing to initially and timely appear in the action deserve grave, if not dispositive, consideration." White, 73 Wn.2d at 353-54. Here, the trial court ruled that it did not matter that Founders knew about the default judgment as early as November, 2011. The court determined that Studio Seven and Moody were innocent insureds similar to the defendants in White and ruled as a matter of law that "the negligence of an insurer cannot be imputed to innocent insureds." The Studio Seven defendants "only needed to show that they acted with diligence once they were personally made aware of the default judgment."

Studio Seven contends its failure to appear and answer is excusable because owner Moody believed that Founders was handling the litigation. Studio Seven's brief, without citing authority, repeatedly refers to the "innocent insured doctrine." In fact, no such doctrine exists. What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome. Little, 160 Wn.2d at 703; Griggs, 92 Wn.2d at 582.

For the proposition that an "innocent insured" must be excused for delays attributable to the insurer or defense counsel, Studio Seven relies primarily on White and Berger, 50 Wn. App. at 312. In White, the plaintiff's complaint alleged

8

Holm was negligent when he ran into her on foot outside his business, causing her to fall and break her leg. White, 73 Wn.2d at 349. Defendant Holm first heard about the suit in a radio newscast and immediately consulted his insurance agent, an insurance adjuster, and a separate attorney. As a result of these conversations, and an agreement the adjuster had Holm sign, Holm believed that "although coverage was questioned, his insurance carrier would provide legal counsel." White, 73 Wn.2d at 349. Once he was served, Holm sent the papers to the insurance adjuster, who forwarded them to the insurance carrier with a statement that Holm would be represented by his own attorney until coverage was determined. "Because of this misunderstanding as to who would provide interim legal counsel," Holm failed to timely appear or answer. White, 73 Wn.2d at 350. White obtained a default judgment.

Holm filed a motion to vacate the default judgment *11 days* after the judgment was granted. The trial court denied the motion. The Supreme Court reversed, concluding that under these circumstances, "any culpable neglect on the part of the insurer" should not be imputed to the Holms, "who were otherwise found to be blameless." White, 73 Wn.2d at 354. "The fact that Mr. Holm did not persistently pursue the adjuster with inquiries relative to the progress of the matter, if such failure be a significant factor in other circumstances, is mitigated somewhat in the instant case by the alacrity with which the default was claimed and the judgment entered, as well as by the promptness with which the motion to set aside the default was submitted." White, 73 Wn.2d at 355.

Studio Seven did not present evidence of a genuine "misunderstanding" as to who was to mount its defense, as occurred in White. Studio Seven correctly believed Founders was responsible. Founders, while recognizing its responsibility, offers no excuse for its delay. Ortiz, the adjuster, states he assumed the parties "were in the process of settlement negotiations" after receiving Akhavuz's demand letter in June 2011. But he does not explain why Founders made no response to the settlement offer and took no action until November 2011. And once Ortiz discovered the default in November 2011 and retained Lane Powell, there was *still* no formal response to the lawsuit until the motion to vacate was filed on June 27, 2012, one day short of a year after the default judgment was entered. Thus, Studio Seven's situation is not analogous to the defendant's in White.

In Berger, the plaintiff slipped on ice while looking for a new vehicle at the Dishman Dodge lot. Berger, 50 Wn. App. at 310. Dishman tendered defense of Berger's claim to its insurance company. The insurance company in turn assigned the claim to a subsidiary, American International Adjustment Company. Dishman was served on May 19, 1986, and the complaint was forwarded and received by American's claims manager, Chuck Abbott, four days later. On June 26, 1986, the court entered a default judgment awarding Berger nearly $100,000. That same day, Berger's attorney contacted American's office and notified Abbott about the default judgment.

The *following day*, counsel for the dealership filed a notice of appearance and sent Berger's attorney a letter requesting he consider setting aside the

default. On July 25, a *month* after the default judgment was entered, Dishman moved to vacate the judgment. Abbott, the claims manager, testified by affidavit that he had made a mistake and "sent the wrong case file to the law firm." Berger, 50 Wn. App. at 311. Abbott did not discover the mistake until June 26, when Berger's attorney called him to notify him of the default judgment. The trial court agreed to vacate the judgment, entered findings of fact and conclusions of law, and ordered Dishman to pay Berger's attorney fees.

In contrast to the defendants' argument in this case, plaintiff Berger argued on appeal that only the acts of the insured defendant could be considered, not those of the insurer. Division Three of the Court of Appeals disagreed. After considering cases from several other jurisdictions, the court concluded, "While no Washington case has directly so held, one can conclude that the acts or omissions of an insurer can be imputed to the insured defendant." Berger, 50 Wn. App. at 312. The court reasoned, "'a delay solely attributable to an oversight or mistake on the insurance carrier's part will excuse a default where the insured has no reason to believe his interests are not being protected.'" Berger, 50 Wn. App. at 312, quoting Baskerville v. Philadelphia Newspapers, Inc., 278 Pa. Super. 59, 419 A.2d 1355, 1356 (1980). The court affirmed the ruling setting aside the default judgment.

Unlike the defendant in Berger who had no reason to believe that his interests were not being protected, Studio Seven did have reason to wonder what happened with Akhavuz's suit. The Studio Seven defendants heard nothing about the lawsuit for more than a year after forwarding the complaint to

11

Founders, yet made no effort to confirm that it was being defended, even though they had been served with a case schedule setting trial for October 2012. As noted in White, 73 Wn.2d at 355, a defendant's failure to "pursue the adjuster with inquiries relative to the progress of the matter" is a factor that can weigh against a finding of excusable neglect, and in this case, it does.

And unlike in Berger, where the claims adjuster sent the wrong case file to the law firm, neither Founders nor Lane Powell points to any "mistake." They provide nothing whatsoever to explain the delay of more than a year after Akhavuz filed suit. There is a cryptic allusion to attorney Barry Mesher leaving Lane Powell, but the firm's attorneys do not say whether, or how, his exit contributed to the delays and inaction.

Insurance companies do not have an automatic right to vacation of a default judgment when they fail to communicate to an insured that nothing is being done. If an insurer's reasonable excuse for a short delay can be attributed to the defendant for purposes of weighing the second White factor as was done in Berger, there is no reason why the insurer's lack of a reasonable excuse for a lengthy delay cannot also be attributed to the defendant.

In addition to the existence of a genuine "misunderstanding" or "mistake," a notable feature distinguishing White and Berger from this case is that the defendants moved to vacate the default judgment within a much shorter time period. In White, the defendant moved to vacate 11 days after the default judgment was entered. In Berger, it was 29 days. See also Calhoun v. Merritt, 46 Wn. App. 616, 621, 731 P.2d 1094 (1986) (defendant entered notice of

appearance 17 days after default judgment was entered and moved to vacate a month later; court held genuine misunderstanding between insurer and insured as to who was responsible for answering complaint was excusable); Norton v. Brown, 99 Wn. App. 118, 992 P.2d 1019, 3 P.3d 207 (1999) (misunderstanding between insured and insurer about how to respond to summons and complaint was excusable where notice of appearance was filed on defendant's behalf a few hours prior to default judgment being entered, defendant tried repeatedly over next 10 months to contact plaintiff's lawyer about the lawsuit, and defendant's counsel only learned of the default after filing a motion to compel), review denied, 142 Wn.2d 1004 (2000).

A default judgment is normally viewed as proper "only when the adversary process has been halted because of an essentially unresponsive party." Norton, 99 Wn. App. 118, 126, 992 P.2d 1019 (2000), citing Gage v. Boeing Co., 55 Wn. App. 157, 160-61, 776 P.2d 991, review denied, 113 Wn.2d 1028 (1989). Studio Seven has presented no evidence of mistake or misunderstanding on the part of its insurer or counsel that would excuse the lengthy delay. The Studio Seven defendants themselves did not inquire whether the lawsuit had been resolved. Under these circumstances, the negligence of Studio Seven's insurer and counsel are attributable to Studio Seven. The lack of a response to the lawsuit by Studio Seven and its agents essentially halted the adversary process.

*Secondary Factors: Due Diligence and Substantial Hardship*

Where a party's defense is prima facie but not conclusive, we may also consider the secondary factors of due diligence and substantial hardship. White,

73 Wn.2d at 353. Due diligence after discovery of a default judgment contemplates the prompt filing of a motion to vacate. Calhoun, 46 Wn. App. at 619; see also In re Estate of Stevens, 94 Wn. App. 20, 35, 971 P.2d 58 (1999) (three months was too long to wait). Studio Seven moved to vacate three weeks after Moody claims he and his company received notice of the judgment. But as discussed above, the insurance company and defense counsel had notice of the judgment many months earlier. The motion to vacate was not filed with due diligence. Luckett v. Boeing Co., 98 Wn. App. 307, 313, 989 P.2d 1144 (1999) (diligence not shown where *attorney* delayed four months in bringing the motion to vacate), review denied, 140 Wn.2d 1026 (2000).

The fourth factor to be considered is whether the party that obtained the default judgment will experience "substantial hardship" if it is vacated. White, 73 Wn.2d at 352. The prospect of having to go to trial is not, by itself, enough to constitute substantial hardship. Pfaff v. State Farm Mut. Auto. Ins. Co., 103 Wn. App. 829, 836, 14 P.3d 837 (2000), review denied, 143 Wn.2d 1021 (2001). But here, the significant risk that the evidence has gone stale as a result of the delay does constitute a hardship. Studio Seven and its insurer had access to and control over critical evidence for the purposes of their own investigation as soon as the suit was filed, while Akhavuz is still waiting for an answer to her complaint and responses to her discovery requests. This factor weighs against vacating the judgment.

In summary, under in the circumstances of this case, the negligence of the insurer and assigned counsel can be imputed to the insured. Inexcusable

neglect is the dispositive factor that should have guided the trial court to deny the motion to vacate.

Reversed and remanded for reinstatement of the default judgment.

_Becker, J._

WE CONCUR:

_Jan, J._

_Dwyer, J._

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2013 DEC 23  AM 11:31