IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

<table>
<tr><td>In the Matter of the Marriage of<br>ANDREA Z. JOLLES,</td><td>)<br>)</td><td>No. 70617-9-I</td></tr>
<tr><td></td><td>)<br>)</td><td>DIVISION ONE</td></tr>
<tr><td>Respondent,</td><td>)<br>)</td><td></td></tr>
<tr><td>and</td><td>)<br>)</td><td>UNPUBLISHED OPINION</td></tr>
<tr><td>MARK P. CAVENER,</td><td>)<br>)<br>)</td><td></td></tr>
<tr><td>Appellant.</td><td>)</td><td>FILED: June 30, 2014</td></tr>
</table>

SCHINDLER, J. — Mark P. Cavener repeatedly failed to file a response to Andrea

Z. Jolles' petition to modify the parenting plan and child support order. A court

commissioner entered an order of default. The superior court denied Cavener's motion

to vacate the default under CR 60(b). Because Cavener does not demonstrate a

conclusive or strong defense to the petition or the other factors under CR 60(b), we

affirm.

FACTS

Mark P. Cavener and Andrea Z. Jolles married in 2001, had a child together, and

divorced in 2003. The parenting plan provided that L.C. would live with Jolles

approximately 55 percent of the time and with Cavener the remainder of the time.

In August 2010, Jolles filed a petition for an order of protection. Jolles alleged

that Cavener had been violent and abusive during the marriage and that she feared for

her safety due to his recent "escalating anger" and violence. Jolles described specific incidents where Cavener spit in her face when dropping off L.C., threw a "heavy brass candlestick" at her while he was holding 4-month-old L.C., threw a chair across the bedroom where L.C. was sleeping, grabbed Jolles' wrist and twisted it until he bruised her arm, pushed and intimidated her, and forcibly took the phone from her and ripped the cord out of the wall. Jolles alleged the most recent incident occurred in July 2010 when Jolles' father attempted to serve documents on Cavener in the courthouse. Cavener allegedly grabbed Jolles' father, pressed him against a wall, and threatened him. Jolles also alleged that Cavener had been making threatening phone calls and sending her "menacing texts" and "angry accusing emails."

On August 30, 2010, the court entered the first of a series of temporary orders of protection.

In November 2010, Debra Hunter of King County Superior Court Family Court Services (FCS) conducted a domestic violence assessment. Hunter concluded that the protection order should continue and should include L.C. Hunter recommended that Cavener have limited residential time with L.C. until he received six months of domestic violence treatment.[1]

Following a contested hearing on December 20, 2010, the court entered a one-year domestic violence protection order. The order relied in part on Hunter's domestic violence assessment and required Cavener to obtain domestic violence treatment. Cavener filed a motion for revision. The court denied the motion.

_____

[1] Cavener provided only 2 pages of Hunter's 14-page report for purposes of this appeal.

In November 2011, Jolles filed a petition to renew the domestic violence protection order. In her declaration in support, Jolles alleged, among other things, that Cavener had not received domestic violence treatment as required by the prior order of protection.

Cavener testified at the January 2012 hearing on the motion to renew the protection order. The court entered a protection order requiring supervised visitation with L.C. but allowed unsupervised visitation once Cavener completed domestic violence treatment. The order stated that Jolles could request modification of the parenting plan if Cavener failed to complete court-ordered treatment or counseling. Cavener moved to revise the order but the court denied the motion. Cavener then filed an appeal in this court. We dismissed the appeal for failure to file a designation of clerk's papers and a statement of arrangements.

On January 13, 2012, Jolles filed a petition to modify the parenting plan and child support. On February 9, Cavener appeared at the hearing on Jolles' petition but claimed he did not receive service of process. The court continued the hearing.

On February 15, Jolles moved for default, arguing that Cavener had failed to file a response to her petition. The court denied Jolles' motion.

On March 21, 2012, Jolles served Cavener again. The return of service indicates that on March 21, Cavener received the summons, petition for modification, case schedule, and proposed orders.

On April 12, Jolles sent a letter to Cavener requesting a response to her petition and cooperation in filing a confirmation of issues.

3

On May 11, 2012, Jolles again filed a motion for an order of default for failure to file a response to her petition. Jolles also filed a notice of hearing for a determination of adequate cause to modify the parenting plan. A hearing was set for May 31. Jolles filed a declaration of mailing indicating that she mailed Cavener all pleadings and proposed orders related to the motion for a default order and the adequate cause hearing on May 10. The record includes a May 12, 2012 delivery confirmation from the postal service.

On May 24, 2012, Cavener filed a pro se motion to dismiss the action due to lack of personal jurisdiction, improper service, and improper venue.

At the May 31 hearing on adequate cause, a court commissioner considered Cavener's motion to dismiss. Jolles alleges, and Cavener does not dispute, that Cavener told the commissioner he contested only service of the motion for adequate cause, not service of process as to Jolles' petition. Consistent with Jolles' allegation, the commissioner ruled that "service of process is required for original process only. Therefore, service is not a legal issue. Respondent was served." The clerk's minutes state that the court then continued the hearing to June 14 "to allow [Cavener] to respond" to Jolles' petition. The order states that "responding party's documents shall be delivered to the moving party not later than 12:00[ ]noon on June 8, 2012."

On June 1, 2012, Jolles appeared at a status conference hearing. Cavener did not appear. The court continued the "adequate cause deadline" to August 13.

On June 14, 2012, the court commissioner entered an order of default. The order states that Cavener received notice of the hearing and "was given the opportunity

4

to respond. He failed to do so."[2] The court entered orders modifying the parenting plan and child support. Although the final amended parenting plan is not in the record before this court, the record indicates that the parenting plan imposed RCW 26.09.191 restrictions, including supervised visitation, due to Cavener's history of domestic violence. The order granting modification states, in pertinent part:

> A Domestic Violence Order for Protection [(DVPO)] was entered in December, 2010 finding that the Father presented a risk of imminent harm to the Mother and child. A Risk Assessment was conducted . . . finding that the Father presented risk to the child and recommending domestic violence batterer's treatment. Subsequent to the entry of the DVPO, the Respondent/Father participated in an intake with domestic violence treatment program Anger Treatment Control Treatment & Therapies deemed the Father not amenable to treatment and refused to admit him into their program. The Father is presently an untreated batterer who presents a substantial risk of harm to the Mother and child. Additional facts are set forth in the Mother's declaration . . . which are incorporated as if set forth fully herein.

> . . . .

> The Father presents a risk of imminent harm to the child. The child's contact with the Father should be suspended until the Father has completed state certified domestic violence treatment and DV Dad's at Wellspring Family Services.

On April 29, 2013, Cavener filed a motion to vacate the order of default under CR 60(b). Cavener argued that the order "was unwarranted, punitive, excessive, and the likely result [of] bias on the part of the court." Cavener claimed he was denied due process prior to the default and challenged the prior protection orders and the restrictions in the final parenting plan. With respect to the restrictions, Cavener argued

---

[2] Under CR 55(a)(1), a court may enter a default when a defendant "has failed to appear, plead, or otherwise defend as provided by these rules."

they were entered "for no good cause," without the input of a guardian ad litem, and without adequately considering the best interests of the child.

At the hearing on the motion to vacate, Cavener's attorney conceded Cavener did not file a response to the petition but argued entering an order of default restricting his parental rights was a "gross overreaction." The attorney noted that Cavener had appeared at numerous hearings and that the court made no findings supporting restrictions under RCW 26.09.191. Jolles' attorney countered that the court repeatedly ordered Cavener to respond to the petition but he failed to do so:

> This was a process that started in January, and [Cavener] was not defaulted until June. And there were multiple court hearings in between. . . . [N]o reasonable person would go six months and go to three court hearings and continually refuse to enter pleadings and file the correct documents and then wonder why the case was dismissed.

The court denied the motion to vacate. The court acknowledged that the law disfavors default judgments, that a motion to vacate a default is equitable in nature, and that the issues in the present case involved rights that are constitutional in nature. Nonetheless, as the court pointed out, a party moving to vacate a default judgment must show substantial evidence supporting a prima facie defense to the claims asserted, the reason for their failure to timely appear or respond, their diligence following notice of the default, and the effect of vacating the judgment on the opposing party. The court concluded Cavener failed to demonstrate a prima facie defense, presented no excuse for his failure to respond to the petition, and was not diligent filing the motion to vacate the default. Cavener appeals.

6

ANALYSIS

The sole issue on appeal is whether the superior court abused its discretion in denying Cavener's motion to vacate the order of default under CR 60(b). Default judgments are "generally disfavored in Washington based on an overriding policy which prefers that parties resolve their disputes on the merits." Showalter v. Wild Oats, 124 Wn. App. 506, 510, 101 P.3d 867 (2004). But courts "also value an organized, responsive, and responsible judicial system where litigants acknowledge the jurisdiction of the court to decide their cases and comply with court rules." Little v. King, 160 Wn.2d 696, 703, 161 P.3d 345 (2007). A court "must balance the requirement that each party follow procedural rules with a party's interest in a trial on the merits." Showalter, 124 Wn. App. at 510. Review of a decision on a motion to vacate is limited to the trial court's decision, not the underlying order that the party seeks to vacate. Bjurstrom v. Campbell, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980). The court's decision will be disturbed only if it abused its discretion. Akhavuz v. Moody, 178 Wn. App. 526, 532, 315 P.3d 572 (2013).

In this case, Cavener moved to vacate the default order under CR 60(b). Specifically, Cavener sought to vacate the order on the grounds of "[m]istake, inadvertence, surprise, excusable neglect or irregularity," CR 60(b)(1), or "[a]ny other reason justifying relief from the operation of the judgment," CR 60(b)(11). The parties agree that when a motion to vacate is sought on these grounds, the moving party must demonstrate (1) there is substantial evidence to support a prima facie defense; (2) the failure to timely appear or respond was occasioned by mistake, inadvertence, surprise,

7

or excusable neglect; (3) the moving party acted with due diligence after notice of the default; and (4) the opposing party will not suffer substantial hardship if the trial court vacates the default. See, e.g., Little, 160 Wn.2d at 703-07 (applying the four factors when motion to vacate was brought pursuant to CR 60(b)(1)); Topliff v. Chicago Ins. Co., 130 Wn. App. 301, 304-08, 122 P.3d 922 (2005) (applying factors when motion to vacate was brought pursuant to CR 60(b)(11)). Cavener contends the superior court misapplied these factors. We disagree.

The first two factors are the "primary" factors. Little, 160 Wn.2d at 704. When evaluating the first factor, we view the evidence in the light most favorable to the moving party. Pfaff v. State Farm Mut. Auto. Ins. Co., 103 Wn. App. 829, 835, 14 P.3d 837 (2000). If the moving party is able to demonstrate a strong or virtually conclusive defense, courts will generally spend little time inquiring into the reasons for the default. Akhavuz, 178 Wn. App. at 533. If, on the other hand, the moving party is unable to show a strong defense, the reasons for default, the timeliness of the motion to vacate, and the prejudice to the opposing party will be more carefully scrutinized. Akhavuz, 178 Wn. App. at 533.

The superior court concluded that Cavener did not demonstrate a prima facie defense to the claims underlying the orders entered by default. In its oral ruling, the court noted that the 2012 renewal of the protection order meant that Cavener had failed to carry his burden of showing "why there isn't a substantial likelihood of continuing behavior warranting a domestic violence restraining order." The court's written decision

8

states, in pertinent part:

> Respondent's counsel has presented a notebook of materials going back several years to support the claim that it was error for King County Superior Court Commissioner Meg Sassaman to include the parties' child in a Domestic Violence (DV) Protection Order entered in December of 2010. That order was not appealed or changed on appeal (a notice of appeal was filed but not acted on by the Respondent) and was not changed on father's Motion for Revision. That Protection Order was renewed in January of 2012.

Nevertheless, Cavener contends there is "no question [he] could have mounted a spirited and credible defense" against the petition for modification of the parenting plan, and "could have certainly counted on a trial court's discretionary powers to determine that the evidence did not warrant his being deprived of immediate unsupervised contact and extensive time with his child even if [RCW 26.09].191 factors were present."[3] We disagree.

Restrictions in parenting plans under RCW 26.09.191 are mandatory if the court finds "a history of acts of domestic violence as defined in RCW 26.50.010(1)." RCW 26.09.191(2)(a)(iii).[4] Here, the undisputed record shows that the domestic violence protection order entered in 2010 found that Cavener "committed domestic violence as defined in RCW 26.50.010" and presented a risk of harm to Jolles and L.C. That order was based on a 14-page FCS domestic violence assessment. Only 2 of the 14 pages are a part of this record.[5] Furthermore, as noted above, the court renewed the

---

[3] Emphasis in original.

[4] RCW 26.50.010(1) defines "domestic violence" as the following conduct committed against a family or household member: (a) a physical assault, (b) a sexual assault, or (c) stalking as defined in RCW 9A.46.110.

[5] It is the appellant's burden to provide a sufficient record to review the issues raised on appeal. Story v. Shelter Bay Co., 52 Wn. App. 334, 345, 760 P.2d 368 (1988).

protection order following an evidentiary hearing in 2012. We conclude Cavener has not demonstrated a conclusive or strong defense to the claims underlying the challenged orders. Accordingly, the other factors for evaluating a motion to vacate a default order must be scrutinized.

The second factor, i.e., the reason for Cavener's default, supports the superior court's decision. Cavener had notice and ample opportunity to file a response to the petition. The court concluded, "There was no mistake, inadvertence, surprise or excusable neglect on the father's part and none has been asserted." The record supports this conclusion. While Cavener points to the superior court's decision extending the deadline for adequate cause to August 2012, that decision did not change the June 8, 2012 deadline for his response to the petition or the June 14, 2012 hearing on the pending motion for default.

At least one of the secondary factors, whether Cavener acted with due diligence, also favors denial of the motion to vacate. Due diligence in this setting contemplates the prompt filing of a motion to vacate. Akhavuz, 178 Wn. App. at 539. We have held that three- or four-month delays are too long. In re Estate of Stevens, 94 Wn. App. 20, 35, 971 P.2d 58 (1999) (three months); Luckett v. Boeing Co., 98 Wn. App. 307, 313, 989 P.2d 1144 (1999) (four months), review denied, 140 Wn.2d 1026, 10 P.3d 406 (2000). Cavener moved to vacate nearly eleven months after the order of default. The motion to vacate was not filed with due diligence.

In sum, the superior court did not abuse its discretion in denying Cavener's motion to vacate.[6]

Affirmed.

WE CONCUR:

---

[6] We deny Jolles' request for fees on appeal.