# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| IN THE MATTER OF A PUBLIC NUISANCE LOCATED AT<br><br>14514 66th Ave E, Puyallup, Pierce County, Washington (Tax Parcel No. 4015423910) | No. 57562-1-II |
| PIERCE COUNTY,<br><br>                         Respondent,<br><br>   v.<br><br>TAX PARCEL NO. 4015423910; AND ALL PERSONS KNOWN OR UNKNOWN IN POSSESSION OR CONTROL OF, OR HAVING RESPONSIBILITY TO MAINTAIN, SAID PARCEL, and<br><br>David Weymouth,<br><br>                         Defendants.<br><br>CLARENCE MAY,<br><br>                         Appellant. | UNPUBLISHED OPINION |

MAXA, J. – Clarence May appeals the trial court's order denying his motion to set aside a default judgment finding that a public nuisance existed and authorizing the abatement of that nuisance on property he now owns.

Pierce County filed a complaint for abatement of public nuisance for a property legally owned at the time by David Weymouth, and the County properly served Weymouth. The County obtained a default judgment in which the trial court found that Weymouth had created, maintained, and/or permitted a public nuisance on his property and authorized the issuance of a warrant of abatement. After the default judgment was entered, May recorded a warranty deed in which Weymouth conveyed to him what purported to be the property subject to the default judgment. After May recorded the deed, the County obtained a warrant of abatement and completed the abatement of the nuisance.

Three years later, May filed motions to void and set aside the default judgment. The trial court denied his motions and then awarded judgment in favor of the County and against Weymouth and the property for abatement costs, attorney fees, and administrative legal costs. We hold that (1) the trial court did not abuse its discretion when it denied May's motion to set aside the default judgment despite May's argument that the failure to name him in the abatement action violated his due process rights; (2) we decline to address whether the County acted unlawfully in executing the warrant of abatement by demolishing an old barn on the property and destroying May's personal possessions because the scope of the abatement is not at issue in this appeal; and (3) the trial court did not err in entering judgment in favor of the County for abatement costs, including attorney fees. Accordingly, we affirm the trial court's orders denying May's motion to set aside the default judgment and awarding judgment in favor of the County for the costs of abatement.

FACTS

*Complaint and Default Judgment*

In May 2019, the County filed a complaint for abatement of a public nuisance at property located at 14514 66th Ave. E. in Puyallup (the property). The complaint named as defendants the property itself, Weymouth, and "all persons known or unknown in possession or control of, or having responsibility to maintain, said parcel." Clerk's Papers (CP) at 1. Weymouth was listed as the owner of the property. The complaint identified three public nuisance violations: (1) improper storage and accumulation of solid waste, (2) allowing people to occupy recreational vehicles on the property for more than 14 days, and (3) violating the terms of multiple written orders. The complaint sought a declaration and judgment that the defendants were guilty of a public nuisance, the issuance of a warrant of abatement, and injunctive relief to abate the public nuisance.

The complaint also alleged that the County had served Weymouth with a final notice and order to correct the violations in March 2019 and had posted a copy of the notice on the property. The posted notice stated that unless the nuisance was abated within 14 days, the County would enter the property and abate the nuisance. Weymouth was advised of a right to appeal within 14 days, but no appeal was filed.

The County then filed a lis pendens, giving notice that it had filed a complaint for the abatement of a public nuisance on the property. The lis pendens stated, "All persons in any manner dealing with the real property subsequent to (and most prior to) the filing of this Lis Pendens will take subject to Plaintiff's interest as established in this action." CP at 15.

The County filed a declaration of service showing that the summons, the complaint, and the lis pendens were served on Weymouth on June 4 at the property.

In July, the County filed a motion for a default judgment because Weymouth had not filed any responsive pleadings. The trial court held a hearing on the County's motion at which Weymouth appeared. The court continued the hearing to allow Weymouth to file an answer to the complaint.

The County then filed a motion for summary judgment. In support of the motion, the County attached a declaration by Jason Arbogast, a code enforcement officer employed with Pierce County Planning and Public Works who was assigned to the case. Arbogast included an exhibit that estimated the costs to clean up the solid waste and other nuisance violations on the property at $14,464.

The trial court reconvened on August 2, 2019 to address the County's motion for default judgment. Weymouth was not present and the court granted the County's motion. The default judgment found that (1) Weymouth had created, maintained, or permitted a public nuisance on the property and Weymouth's conduct regarding the property constituted a public nuisance; (2) Weymouth was liable for abatement costs; and (3) the court clerk was authorized to issue a warrant of abatement.

*Abatement of Nuisance*

On October 2, 2019, the warrant of abatement was issued. And on October 9, the County entered the property and conducted the abatement of the public nuisance activities. The warrant of abatement was served on Weymouth, but "multiple unnamed occupants" also were found at the property. CP at 48.

The abatement activities were described as follows: "Solid waste (including junk vehicles) was removed as well as an unsafe structure which was so derelict as to be considered solid waste." CP at 49. The County disposed of 85.23 tons of material. The estimated costs of abatement less any salvage value was $31,069.09.

Almost three years later, in August 2022, the County filed a motion to assess the costs of nuisance abatement. The motion noted that the original cost estimate was $31,069.09. However, the motion acknowledged that a "defendant" had filed a lawsuit in Kitsap County alleging that a barn structure was demolished without authority. Therefore, the County was seeking assessment of only the undisputed costs: $8,364.54. The County requested the issuance of a lien against the property in that amount, plus taxable costs and fees.

May appeared for the first time and opposed the motion to assess abatement costs on various grounds, including that the County provided no notice to him or named him as a party, the default judgment was void, and the County failed to comply with the statutory requirements for abating a nuisance. He argued that the County did not issue any notice indicating that the old barn was a nuisance, did not have a court adjudicate that the barn was a nuisance, and did not ask May for his permission to come onto the property and tear down the barn. May also claimed that the County failed to sell the seized property in order to offset the abatement costs.

*Motion to Set Aside Default*

On September 30, 2022, May filed a motion for a declaratory judgment that the default judgment was void because it violated his right to due process. In a supporting declaration, May alleged that he moved to the property in 2019 and had been a partial owner since then. He claimed that he had paid three years of back taxes and had continued to pay taxes since 2019.

5

May also submitted public records from Pierce County showing that both he and Weymouth were listed as the taxpayers for the property from 2016 through 2020. May claimed that upon moving in to the property, he began cleaning it up and moved in his personal possessions, including two motorcycles, a wood chipper, a large metal toolbox filled with tools, an auto parts washer, and other personal items that he used for work. However, May stated that the County never gave him notice of the nuisance abatement action.

May claimed that when the County arrived to execute the warrant of abatement on October 9, 2019, he tried to explain that he was the co-owner of the property and that they were taking his personal property. But the County ignored him and tore down the old barn that had some of his personal items stored inside.

On October 19, May filed a motion to set aside the default order, default judgment, and warrant of abatement order. In a supporting declaration, May stated that he became co-owner of the property on August 14, 2019. He attached a recorded warranty deed signed by Weymouth transferring certain described property to May. The deed conveyed the property to May "[s]ubject to existing taxes, assessments, liens, encumbrances, covenants, conditions, restrictions, rights of way and easements of record." CP at 284.

In an additional declaration, May stated that the County visited the property 11 times before the abatement in October 2019. He alleged that at no time during these visits did the County mention that the old barn or May's personal possessions within the barn were at issue. And May claimed that during a visit in April 2019, he told a deputy sheriff that he was a co-owner of the property but that he still needed to record the deed.

May also stated that he recorded a quitclaim deed to replace the warranty deed in July 2021. The quitclaim deed stated, "This Quitclaim Deed Replaces the Incorrect Warranty Deed Recorded on August 14, 2019." CP at 425. Under the quitclaim deed, Weymouth transferred the property to himself and May as joint tenants in common.

The trial court denied May's motions to void and set aside the default judgment. The court found that May was not the legal owner of the property at the time of the default order and any ownership interest he may have had was not perfected. Therefore, the County was not on legal notice of any ownership interest that May had in the property. As a result, the court concluded that May did not meet his burden that service was improper.

The trial court then awarded judgment in favor of the County and against Weymouth and the property in the amount of $8,051.04, including $4,530.04 in abatement costs, $3,150 in attorney fees, and $371 in administrative legal costs. The judgment was entered against Weymouth and the property, and became a priority lien against the property.

May appeals the trial court's orders denying his motion to set aside the default judgment and awarding judgment in favor of the County for abatement costs.

## ANALYSIS

A.    MOTION TO SET ASIDE DEFAULT JUDGMENT

May argues that the trial court erred by denying his motion to set aside the default judgment finding a public nuisance on the property and ordering a warrant of abatement. We disagree.

1. Legal Principles

CR 55(c) provides that a trial court may set aside a default judgment in accordance with CR 60(b). Under CR 60(b), a party may obtain relief from a default judgment based on various grounds. May references two subsections of CR 60(b): (1) "Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;" and (2) "any other reason justifying relief from the operation of the judgment."[1]

A trial court determines whether to set aside a default judgment under CR 60(b)(1) based on a four-part test articulated in *White v. Holm*, 73 Wn.2d 348, 352, 438 P.2d 581 (1968). *See Sellers v. Longview Orthopedic Associates, PLLC*, 11 Wn. App. 2d 515, 519, 455 P.3d 166 (2019). A defendant must show:

> "(1) that there is substantial evidence supporting a prima facie defense; (2) that the failure to timely appear and answer was due to mistake, inadvertence, surprise, or excusable neglect; (3) that the defendant acted with due diligence after notice of the default judgment; and (4) that the plaintiff will not suffer a substantial hardship if the default judgment is vacated."

*Id.* at 519-20 (quoting *Little v. King*, 160 Wn.2d 696, 703-04, 161 P.3d 345 (2007)).

There are three guiding principles for deciding whether to set aside a default judgment: "(1) default judgments are disfavored because the preference is to resolve cases on the merits, (2) deciding whether to set aside a default judgment is a matter of equity and the 'primary concern is whether justice is being done,' and (3) '[w]hat is just and equitable must be determined based on the specific facts of each case.'" *Sellers*, 11 Wn. App. 2d at 520 (alteration in original) (quoting *VanderStoep v. Guthrie*, 200 Wn. App. 507, 517-18, 402 P.3d 883 (2017)).

---

[1] In the trial court, May filed a motion for a declaratory judgment that the default judgment was void. Under CR 60(b)(5), a court can grant relief if a judgment is void. But May does not rely on this subsection in this appeal.

We review a trial court's decision on a motion to set aside a default judgment for an abuse of discretion. *VanderStoep*, 200 Wn. App. at 518. Discretion is abused if exercised based on untenable grounds or for untenable reasons. *Id.*

2. *White* Analysis

May claims that the trial court should have set aside the default judgment because he satisfied the four *White* factors. We disagree.

a. Prima Facie Defense

The first *White* factor is whether May has presented substantial evidence supporting a prima facie defense. *Sellers*, 11 Wn. App. 2d at 519-20. May argues that he had a defense to the finding of a public nuisance because the County did not provide notice of the conditions constituting a nuisance. He relies on Pierce County Code (PCC) 8.08.080, which states that the County "may" give notice that a public nuisance exists to the "landowner(s)," and PCC 8.09.050(A)(1), which requires the County to give notice to "a person in charge of the property" that a property is being declared a chronic nuisance.

However, the County expressly alleged that it served Weymouth with a final notice and order to correct the violations in March 2019 and posted a copy of the notice on the property. None of May's declarations refute that allegation.

May also argues that he had a defense because he personally did not receive notice of the nuisance or the abatement action. May claims that he should have received notice because he paid taxes on the property and therefore was a "landowner" under the Pierce County Code definition. But there is no indication that the Pierce County Code requires the County to give notice to *all* landowners or persons in charge of the property, and May did not contest that

Weymouth received notice of the nuisance. Further, May did not refute the County's allegation that a final notice and order to correct the nuisance violations was posted on the property – where May allegedly lived – in March 2019. And as discussed below, May was not entitled to notice of the lawsuit because he was not a legal owner of the property when the County filed the lawsuit.

Finally, May argues that the County's complaint failed to specifically mention the old barn and the personal possessions stored within, and failed to explain how they were a public nuisance. But this argument involves the scope of the execution of the warrant of abatement, not whether a public nuisance existed at all. May did not present any evidence that the public nuisance violations stated in the complaint did not exist.

We conclude that the first *White* factor does not support setting aside the default judgment.

b.    Excusable Neglect/Irregularity

The second *White* factor is whether May's failure to timely appear and answer was due to mistake, inadvertence, surprise, or excusable neglect. *Sellers*, 11 Wn. App. 2d at 520. May argues that his failure to answer was due to excusable neglect: he had no duty to timely appear and answer because the County improperly did not name him in its complaint.

May claims that the County had knowledge of his ownership interest in the property because (1) he orally told a deputy sheriff of his ownership interest before the County filed its nuisance complaint and again on the day of abatement, (2) public records disclosed that he had been a taxpayer for the property since 2016, and (3) he recorded his warranty deed two months before the day of actual abatement.

10

However, May recorded his warranty deed after the County filed its complaint for public nuisance abatement at the property and after the trial court entered the default judgment authorizing the warrant of abatement. Until then, May did not have any legal ownership interest in the property. *See* RCW 64.04.010 ("Every conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed."). Therefore, the County was not required to give May notice of the lawsuit. Weymouth was the only legal owner at the time of the complaint and default judgment, and the County properly served Weymouth with the summons and complaint.

Further, the fact that May may have become a legal owner after the default judgment was entered but before the abatement occurred is immaterial. That fact does not affect whether the County was required to give May notice of the abatement action.

We conclude that the second *White* factor does not support setting aside the default judgment.

        c.    Due Diligence

The third *White* factor is whether May acted with due diligence after notice of the default judgment. *Sellers*, 11 Wn. App. 2d at 520. May does not address this factor.

May knew or should have known that the County had obtained a judgment authorizing abatement of the nuisance when the County engaged in abatement activities on the property in October 2019. However, May still did not move to set aside the default judgment until almost three years later. He offered no explanation for this delay. A delay of three years after witnessing the abatement before moving to set aside a default judgment does not constitute due diligence.

11

We conclude that the third *White* factor does not support setting aside the default judgment.

      d.    Substantial Hardship to Plaintiff

The fourth *White* factor is whether the County will suffer a substantial hardship if the default judgment is vacated. *Sellers*, 11 Wn. App. 2d at 520. May claims that there is no hardship on the County because the County is required to prove that the barn and personal possessions were a public nuisance, and setting aside the default judgment simply would require the County to meet that burden. But that is not the test. The plaintiff has the burden of proof in every case. The question for the fourth factor is whether the plaintiff will be damaged in some way beyond merely reinstating the case and having to go to trial. *See Akhavuz v. Moody*, 178 Wn. App. 526, 539, 315 P.3d 572 (2013).

Here, the default judgment ordered a warrant of abatement to remedy the public nuisance violations. The County acted upon the warrant in October 2019 when it removed solid waste and "an unsafe structure which was so derelict as to be considered solid waste." CP at 49. The County hired labor and equipment operators, tow trucks, and containers for the transport of the waste. Over 85 tons of material was removed, at a total expense of $31,069.09. Because the County already had completed the abatement that the default judgment ordered, the County would suffer a substantial hardship if the default judgment was set aside.

We conclude that the fourth *White* factor does not support setting aside the default judgment.

e.    Summary

May does not meet any of the factors in the four-part *White* test.  Therefore, we hold that

the trial court did not abuse its discretion in denying May's motion to set aside the default

judgment.

B.    ARGUMENTS REGARDING EXECUTION OF THE WARRANT OF ABATEMENT

May makes several arguments regarding the destruction of the old barn on the property

and his personal property inside the barn.  He claims that (1) the County failed to obtain a

judgment establishing that the barn on the property and its contents constituted a public nuisance

as required in RCW 7.48.260, (2) the County failed to give notice of the alleged deficiencies

regarding the alleged structurally deficient barn as required by the International Property

Maintenance Code (adopted by PCC 17C.80), (3) the warrant of abatement did not authorize the

County to demolish the barn and destroy his personal property, and (4) the barn did not

constitute "solid waste" under the terms of the warrant of abatement.  May also suggests that the

County should have discontinued its abatement efforts once it learned that he had become a legal

owner of the property.

However, these arguments do not involve entry of the default judgment or whether the

trial court should have set aside the default judgment, which is the issue on appeal.  These

arguments involve execution of the warrant of abatement and the scope of that execution, which

is not at issue in this appeal.  In fact, as the parties note, whether the County had authority to tear

down the barn and seize the personal possessions within the barn currently is being litigated in

Kitsap County Superior Court.  Therefore, we decline to address these arguments.

C.       JUDGMENT FOR ABATEMENT COSTS

May argues that the trial court erred in entering judgment in favor of the County for abatement costs because (1) the County failed to sell valuable materials in order to offset abatement costs in violation of RCW 7.48.280, (2) the County did not provide an estimate of abatement costs as required in RCW 7.48.260, and (3) the award of attorney fees was not authorized.  We disagree.

First, RCW 7.48.280 states,

> The expense of abating a nuisance, by virtue of a warrant, can be collected by the officer in the same manner as damages and costs are collected on execution, except that the materials of any buildings, fences, or other things that may be removed as a nuisance, *may* be first levied upon and sold by the officer, and if any of the proceeds remain after satisfying the expense of the removal, such balance must be paid by the officer to the defendant or to the owner of the property levied upon, and if said proceeds are not sufficient to pay such expenses, the officer must collect the residue thereof.

(Emphasis added.)

May claims that RCW 7.48.280 imposes a mandatory duty for the County to surplus all valuable materials.  But this statute merely *allows* the County to sell materials in order to offset the abatement costs.  It does not *require* the County to do so.

In any event, the County did attempt to offset the abatement costs.  In the abatement description in the return of the warrant, the County noted that the abated public nuisances would be brought to a scrap metal processing facility and any proceeds would be paid to the County or to the contractor to offset the abatement expenses.  May argues that the barn planks and his personal possessions should have been sold.  However, the County only sought recovery of costs related to undisputed abatement costs, not including the barn.

14

Second, RCW 7.48.260 states that when a person is found guilty of a nuisance, the trial court may issue a warrant for abatement "after inquiry into and estimating, as nearly as may be, the sum necessary to defray the expenses of such abatement." May claims that the County did not file such an estimate.

However, before the trial court entered the default judgment and issued the warrant of abatement the County had filed a motion for summary judgment. Attached as an exhibit was an estimate for costs to clean up the solid waste and other nuisance violations on the property. The estimate included the costs for disposal, labor, transportation, and security, which totaled $14,464. This estimate complied with RCW 7.48.260.

Third, May argues that RCW 7.48.280 does not authorize the award of attorney fees as part of abatement costs. The County does not address this argument. However, under PCC 8.08.140(A), "a public official may charge the costs of abatement to the landowner(s) who received the Notice of Violation and Abatement or to the landowner(s) who were found personally liable for the costs of abating the nuisance." And costs include, "[p]ersonnel costs . . . *including all attorney's fees* and costs incurred in the investigation, documentation, and abatement of the nuisance." PCC 8.08.140(C)(1) (emphasis added).

We hold that the trial court did not err in awarding judgment in favor of the County for the amount of the abatement costs.

## CONCLUSION

We affirm the trial court's orders denying May's motion to set aside the default judgment and awarding judgment in favor of the County for the costs of abatement.

No. 57562-1-II

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

MAXA, J.

We concur:

GLASGOW, CJ

CRUSER, J.