# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SUNGROWN FARMS LLC, a Washington State limited liability company,<br><br>Respondent,<br><br>v.<br><br>TOKELAND GROWING LLC, a Washington limited liability company, and ALL SUB-TENANTS,<br><br>Appellant.<br><br>SEAN KIRBY; CRAIG TROTTER; JAMES VANHOUTE; GARY FEARS; and JOHN DOES 1-20,<br><br>Third Party Defendants Below. | No. 56758-0-II<br><br><br>UNPUBLISHED OPINION |

VELJACIC, J. — Tokeland Growing LLC appeals the trial court's orders granting Sungrown Farms LLC's motion for summary judgment and denying its motion for reconsideration. Tokeland argues that the trial court erred in granting Sungrown's motion for summary judgment because genuine issues of material fact remain regarding its counterclaims for breach of contract, breach of the covenant of quiet enjoyment, and negligent misrepresentation. Tokeland also argues that the trial court abused its discretion in denying its motion for reconsideration because substantial justice has not been done due to its trial counsel's incompetence and because Sungrown's motion for summary judgment should have been denied. Sungrown requests attorney fees on appeal under the lease agreement at issue.

We hold the trial court did not err in granting Sungrown's motion for summary judgment because Tokeland fails to provide evidence establishing an issue of material fact. We hold that the trial court did not abuse its discretion in denying Tokeland's motion for reconsideration. We grant Sungrown's request for attorney fees on appeal. Accordingly, we affirm.

FACTS

I.    FACTUAL BACKGROUND

A.    The Parties and the Lease Agreement

Tokeland is in the business of growing recreational marijuana for commercial sale. Vicki Larson is its managing member. On July 1, 2019, Tokeland's then-current lease was set to expire and it needed to acquire a new lease in order to continue its business operations.

Sungrown owns real property in Shelton. Sean Kirby is Sungrown's managing member. In January 2019, Sungrown placed an advertisement on Craigslist seeking to lease a portion of its Shelton property. Tokeland expressed interest in leasing the property for its marijuana business.

On January 16, 2019, Sungrown prepared a letter of intent as an offer to lease the advertised property. Sungrown transmitted the letter of intent to Tokeland the following day. The terms of the letter of intent provided in relevant part that:

> The Leased space is defined as 40,000 square feet of raw land, commonly known as 160 West Westfield Court, Unit 3, Shelton WA 98584. The raw land will be fully fenced with 8-foot-tall chain link with sight obscuring fabric attached to the fence. Power, water and septic will be brought to Unit 3. A closed-circuit camera system will be installed on the perimeter of the fence and a burglar alarm will be installed on two access points on the fence, (one man gate and one vehicle gate). Any further security will be the responsibility of the tenant. A 2500 SF building to be constructed on the 40,000 SF leased space at a later date.

Clerk's Papers (CP) at 291.

Tokeland did not sign the letter of intent within the required period of time because its grower refused to relocate to Shelton. However, in April 2019, Tokeland expressed a renewed interest in leasing Sungrown's property after it failed to secure a lease in Ferndale.

On May 15, 2019, Tokeland and Sungrown entered into a lease agreement. Section 2 of the lease agreement concerns the commencement date and possession date, which provided that:

> **2. Term.** The term of this lease is 24 months and commences on the 1st day of the month that Tenant receives approval from the Washington State Liquor and Cannabis Board ("WSLCB") to do business at the Premises ("Commencement Date") and ends two years from the date possession is given to Tenant unless sooner terminated pursuant to any provision set forth below. All rents will start three months from the date Landlord delivers possession of the premises. It is the responsibility of the Tenant to have his/her pre-submission conference early and to apply for the build out permits in a timely manner. This will minimize the time it will take to receive a State License which permits Tenant the ability to begin production.

CP at 152-53. Section 7 of the lease agreement concerns Sungrown's responsibilities in developing the property for Tokeland's use:

> **7. Landlord Responsibilities.** . . .
> . . . .
> Landlord will fence leased premises with an 8-foot cyclone fence and install 16 security cameras on premises perimeter providing a 4x4 square foot security shed with a security system intrusion alarm.

CP at 154-55. Section 9 of the lease agreement imposes a covenant on Sungrown to ensure Tokeland's right to quietly enjoy its possession of the property:

> **9. Quiet Enjoyment.** The Landlord covenants that on paying the Rent and performing the covenants contained in this Lease, the Tenant will peacefully and quietly have, hold, and enjoy the Premises for the agreed term.

CP at 155. Section 10(b) directs Tokeland to serve a written notice of default in the event Sungrown fails to meet its duties and obligations:

3

**10. <u>Default: Additional Rights on Reentry</u>.**

. . . .

(b) **Default by Landlord.** Landlord shall be in default under the terms of this Lease if Landlord fails to observe or perform any of its obligations, representations, warranties, conditions, covenants or provisions herein. In the event of default by Landlord, Tenant shall serve upon Landlord written notice of default. If Landlord shall be in default for more than thirty (30) days after receipt of Tenant's notice specifying such default, Tenant may incur any expense necessary to perform any obligation of Landlord specified in such notice and deduct such expense from any sums payable by Tenant under this Lease thereafter to become due or pursue any other remedy available at law, equity or by statute, including, but not limited to, damages and/or the right to terminate said lease.

CP at 156. Section 11 of the lease agreement concerns the payment of utilities charges:

**11. <u>Utilities and Other Costs</u>.** Landlord shall pay promptly when due all charges for sewage and water, Tenants shall pay promptly when due all charges for garbage disposal, telephone, electricity, cable, heat, gas, power, and any other utilities or services and like charges, including any fire protection charge, furnished to or consumed upon the leased Premises, whether separately metered or prorated by Landlord.[1]

CP at 156.

Section 14 provides the prevailing party the right to attorney fees in a lawsuit related to this lease agreement:

**14. <u>Attorney Fees</u>.** In the event that any action is filed in relation to this Lease, the unsuccessful party in the action will pay to the successful party, in addition to all the sums that either party may be called on to pay, a reasonable sum for the successful party's attorney fees.

CP at 157.

B.      Tokeland Takes Possession of the Shelton Property on July 3, 2019

The marijuana industry is highly regulated and there are strict requirements in relocating plants and equipment from one site to another. In order to obtain approval to relocate, the leased

---

[1] Paragraph 11 is the only provision in the lease having to do with landlord Sungrown's obligation regarding utilities. As is plain, the obligation is to pay all charges for sewage and water.

property needed to be built out and prepared in accordance with WSLCB's rules and regulations. Relevant here, such rules and regulations required constructing an 8-foot cyclone fence and installing security cameras to the leased property, which is reflected in section 7 of the lease agreement above.

After the parties executed the lease agreement, Sungrown began efforts to build the required fencing, shed, and security system. Because the fence needed to be 8-feet tall, county building permits and multiple inspections were required.

On June 12, 2019, the WSLCB approved Tokeland's site plan which permitted the parties to prepare the leased property for final inspection. WSLCB requested Tokeland to update it via e-mail every 30 days, detailing the status of the build-out with proof of progress until the location was ready for final inspection.

On June 23, all final inspections and improvements to the leased property were completed. Sungrown informed Tokeland about the construction status and inquired about Tokeland's anticipated move-in date. Larson replied that Tokeland needed to move by June 30.

On June 24, Larson informed Sungrown that Tokeland was ready to relocate onto the property. Although Tokeland received all other necessary approvals from the WSLCB, Larson acknowledged that Tokeland was "not approved to move in until [the] red tape says." CP at 303.

On July 2, the WSLCB approved Tokeland's application to relocate its business operations onto Sungrown's property. Tokeland took possession of the leased property the following day.

C.     Electrical Maintenance on March 27, 2020

On March 26, 2020, Sungrown's electrician, Paul Johns, notified Larson's husband that the power would be shut off the following day for up to a few hours. On March 27, Sungrown

5

disconnected Tokeland's electrical service from 8:39 AM to 11:08 AM, a period of about 2 1/2 hours.

Larson stated that Tokeland did not receive notice of the power shut off. Larson also stated that the power shut off led to the loss of 59 cannabis plants due to exposure to freezing conditions. Larson submitted photographs to support Tokeland's claim.

Craig Trottier was Tokeland's grower at the time and has over 15 years of experience working with cannabis plants. Trottier stated that he personally saw the cannabis plants after the power was restored and observed them to be healthy and unaffected by the power outage. Trottier also stated that Tokeland's photographs depicting the dead plants were consistent with the group of dead plants that were set aside on the leased property awaiting proper disposal in accordance with WSLCB's rules and regulations.

Jeffery Leonard is Certified Professional Horticulturist. Leonard stated that "[t]he photographs provided are not consistent with damage due to frost or cold conditions. These plants appear to have become damaged due to lack of watering or drought conditions." CP at 142.

D.    Potable Water Line Repairs

Kirby stated that Tokeland had access to two wells on the leased property. One well provided irrigation water and the other provided potable water. On May 20, 2020, Sungrown notified Tokeland via e-mail that it would be hiring a plumber to repair a water line due to damage caused by another tenant. Sungrown stated that this would require shutting off its access to potable water, but noted that well water would be available during the repair period. Tokeland thanked Sungrown for the notice. Repairs were completed within 10 days.

E.      Tokeland's Failure to Pay Rent

On October 1, 2019, Tokeland made its first rent payment.  However, in February 2020, Tokeland failed to timely pay rent.  After March 2020, Tokeland failed to make any rent payments to Sungrown.

On May 14, 2020, Sungrown sent Tokeland a notice of default for its failure to pay rent.

Tokeland never provided notice to Sungrown that Sungrown had failed to perform any terms of the lease, as required by section 10(b) of the lease agreement.

II.      PROCEDURAL HISTORY

On July 2, 2020, Sungrown filed a complaint in Mason County Superior Court for breach of contract and ejectment.  On January 12, 2021, Tokeland filed a second amended answer and asserted various affirmative defenses and counter claims.  Relevant here, Tokeland alleged breach of contract, breach of the covenant of quiet enjoyment, and negligent misrepresentation.

On May 11, Sungrown served Tokeland with requests for admission under CR 36 by e-mail and certified mail.  Tokeland failed to respond to Sungrown's requests for admission.

On August 30, Sungrown filed a motion for summary judgment asking the trial court to rule in favor of its breach of contract claim and to dismiss Tokeland's counterclaims.  The trial court granted Sungrown's motion based on the declarations and documentation filed—it did not consider Tokeland's failure to respond to Sungrown's requests for admission under CR 36.

On November 8, Larson filed a motion for reconsideration.  She raised new issues and argued that prior counsel's errors required the court grant reconsideration in the interest of justice. The trial court denied the motion for reconsideration.  Tokeland appeals.

ANALYSIS[2]

I.      SUMMARY JUDGMENT

Tokeland argues that the trial court erred in granting Sungrown's motion for summary judgment because genuine issues of material fact remain as to its claims for breach of contract, breach of the covenant of quiet enjoyment, and negligent misrepresentation. We disagree.

A.      Standard of Review

We review a trial court's order granting summary judgment de novo. *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 287, 481 P.3d 1084 (2021). We perform the same inquiry as the trial court in its review. *City of Seattle v. Long*, 198 Wn.2d 136, 145, 493 P.3d 94 (2021).

We consider the facts and reasonable inferences in the light most favorable to the nonmoving party. *Meyers*, 197 Wn.2d at 287. Summary judgment is appropriate if the pleadings, affidavits, and depositions show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 722, 425 P.3d 837 (2018); CR 56(c). "'A material fact is one that affects the outcome of the litigation.'" *Keck v. Collins*, 184 Wn.2d 358, 370 n.8, 357 P.3d 1080 (2015) (quoting *Owen v Burlington N. Santa Fe R.R.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005)).

"Though the trial court may be lenient to a nonmoving party's affidavits presented in response to a motion for summary judgment, it may not consider conclusory statements contained in the nonmoving party's affidavits." *Baldwin v. Silver*, 165 Wn. App. 463, 471, 269 P.3d 284 (2011). A nonmoving party cannot defeat a motion for summary judgment with conclusory

---

[2] In its reply brief, Tokeland appears to contend that summary judgment should have been denied because there were claims against certain third party defendants that were not addressed by Sungrown. However, Tokeland did not provide argument as to any claims against the third party defendants at the summary judgment stage. We exercise our discretion and do not consider the argument as it is improperly raised for the first time on appeal. RAP 2.5(a).

8

statements of fact. *Overton v. Consol. Ins. Co*., 145 Wn.2d 417, 430-31, 38 P.3d 322 (2002). Summary judgment is proper if, given the evidence, reasonable persons could reach only one conclusion. *Walston v. Boeing Co*., 181 Wn.2d 391, 395, 334 P.3d 519 (2014).

    B.    Discussion

As an initial matter, Sungrown appears to argue that Tokeland's failure to respond to its requests for admissions (RFAs) results in the requests being deemed admitted, which dispenses with Tokeland's appeal. But the trial court did not consider the admissions, accordingly, so we decline to do so as well. Instead, we turn to the merits of the trial court's decision to grant of summary judgment.

Tokeland argues that the trial court erred in granting summary judgment because issues of fact remain as to whether Sungrown breached the commencement date and move-in date provision set out in the lease agreement. We disagree.

To demonstrate a breach of contract, the plaintiff must show that (1) the contract imposed a duty on the defendant, (2) the defendant breached that duty, and (3) an economic loss occurred as a result of the breach. *Myers v. State*, 152 Wn. App. 823, 827-28, 218 P.3d 241 (2009). We interpret contracts according to the contracting parties' intent. *Id*. at 828.

We apply an objective manifestation theory of contracts, which attempts to determine the parties' intent based on objective manifestations in the agreement rather than unexpressed subjective intent of the parties. *Pelly v. Panasyuk*, 2 Wn. App. 2d 848, 865, 413 P.3d 619 (2018). Subjective intent is generally irrelevant if intent can be determined from the actual words of the contract. *Brogan & Anensen, LLC v. Lamphiear*, 165 Wn.2d 773, 776, 202 P.3d 960 (2009).

Section 2 of the lease agreement provides that Tokeland's lease "commences on the 1st day of the month that Tenant receives approval from the Washington State Liquor and Cannabis

Board ("WSLCB") to do business at the Premises ("Commencement Date") and ends two years from the date possession is given to Tenant unless sooner terminated pursuant to any provision set forth below." CP at 152-53.

Here, Tokeland contends that genuine issues of material fact remain as to the commencement date and move-in date provision because "there is debate about what the intentions of the parties were and what that date actually meant." Br. of Appellant at 33. Tokeland's argument appears to conflate the concepts of "material issues of fact" with "ambiguity of a contract term." Taken at its word, Tokeland appears to assert that there is an issue of fact as to the intent of the parties such that summary judgment should not lie. However, an issue of fact must be material to be legally significant in a summary judgment context. We are unable to discern whether Tokeland is asserting that section 2 is ambiguous such that we need consider the intent of the parties, or whether there is a factual dispute around conduct that would amount to a breach of this term. We conclude that there is no alternative reading provided by Tokeland, so we are left with the plain meaning: that Tokeland could not move its business into the property until the WSLCB approved the move. That approval was granted on July 2, 2019.

Moreover, Tokeland's argument appears to assume that the parties subjectively intended the commencement date and move-in date to occur prior to the expiration of Tokeland's prior lease. However, the lease agreement does not contain any language stating that Tokeland could possess the property before its prior lease expired. Rather, the plain meaning of the lease agreement is that possession would be given to Tokeland whenever the WSLCB approved its application to change business locations. Indeed, Tokeland's managing member, Larson, acknowledged this fact via text message. The contract provision is unambiguous. And again, it is uncontroverted that the WSLCB did not grant approval until July 2, 2019.

The trial court did not err in granting Sungrown's motion for summary judgment on Tokeland's breach of contract claim.

C.     Breach of the Covenant of Quiet Enjoyment

Tokeland argues that the trial court erred in granting summary judgment because genuine issues of material fact remain as to whether Sungrown breached the covenant of quiet enjoyment by cutting off its access to power and potable water on two occasions.  We disagree.

Generally, a covenant of quiet enjoyment "secures the tenant from any wrongful act by the lessor which impairs the character and value of the leased premises or otherwise interferes with the tenant's quiet and peaceable use and enjoyment thereof."  *Cherberg v. Peoples Nat'l Bank of Wash.*, 15 Wn. App. 336, 343, 549 P.2d 46 (1976) (holding that landlord breached the covenant of quiet enjoyment by electing to demolish the building, threating to terminate the tenant's lease, and "effectively forc[ing] its tenant to close down its business and temporarily vacate the leased premises"), *aff'd in part and rev'd on other grounds*, 88 Wn.2d 595 (1977).  A claim for a breach of the covenant of quiet enjoyment requires a showing of breach and resulting damages. *Foley v. Smith*, 14 Wn. App. 285, 291, 539 P.2d 874 (1975).  The covenant of quiet enjoyment is breached when the grantee is actually or constructively evicted by someone holding paramount title that existed at the time of the conveyance.  *Id.*

1.     Power Outage

Here, Tokeland fails to show that genuine issues of material fact remain insofar as the power shut off is concerned because there is no evidence that the power outage caused damage to the cannabis plants.  Larson's declaration cannot be considered because, unlike Trottier's and Leonard's declarations, Larson does not allege that she personally witnessed the plants after the power outage and does not affirmatively show that she is competent to testify on the matter.

11

*Barkley v. GreenPoint Mortg. Funding, Inc.*, 190 Wn. App. 58, 67, 358 P.3d 1204 (2015); CR 56(e). Trottier's and Leonard's declarations on the other hand conclusively show that the plants in the pictures presented by Larson were plants that died at a different time and due to a different cause: lack of water. No reasonable trier of fact could conclude otherwise because Larson's declaration does not present competent evidence that contradicts these facts.

Tokeland also suggests that notice provided to Larson's husband was insufficient notice of the impending power shut off. But this argument fails to create a genuine issue of material fact because whether or not Tokeland received notice of the power shut off is immaterial because, as discussed above, there is no evidence that the power shut off caused any damage to the plants. Accordingly, this argument fails.

### 2. Water Line Repair

Tokeland also fails to show that genuine issues of material fact remain as to whether the potable water line repairs amounted to a breach of the covenant of quiet enjoyment because, again, there is no evidence of damages in this record. Tokeland states in a conclusory fashion that the potable water line repairs "impair[ed] Tokeland's ability to conduct business on the leased premises, and resulting damages to Tokeland." Br. of Appellant at 33-34. However, a nonmoving party cannot defeat a motion for summary judgment with conclusory statements of fact. *Overton*, 145 Wn.2d at 430-31. Accordingly, this argument fails.

In sum, we hold that the trial court did not err in granting Sungrown's motion for summary judgment on Tokeland's claim for breach of the covenant of quiet enjoyment.

D.    Negligent Misrepresentation

Tokeland appears to argue that the trial court erred in granting Sungrown's motion for summary judgment as to its negligent misrepresentation claim. We disagree.

In Washington,

> a plaintiff claiming negligent misrepresentation must prove by clear, cogent, and convincing evidence that (1) the defendant supplied information for the guidance of another in his or her business transactions, (2) the information was false, (3) the defendant knew or should have known that the information was supplied to guide the plaintiff in his or her business transactions, (4) the defendant was negligent in obtaining or communicating the false information, (5) the plaintiff relied on the false information, (6) the plaintiff's reliance was reasonable, and (7) the false information proximately caused the plaintiff damages.

*Repin v. State*, 198 Wn. App. 243, 278, 392 P.3d 1174 (2017).

Here, Tokeland appears to contend that during negotiations Sungrown negligently misrepresented that the water and sewage system on the property were sufficient to support its business operations. Tokeland supported its argument below based on Larson's conclusory declaration stating the same. However, Tokeland failed to set forth any evidence actually showing that the water and sewage systems were deficient or that there was a standard that Sungrown was required to meet in its provision of water and sewer services. Because a nonmoving party cannot defeat a motion for summary judgment with conclusory statements of fact, this argument fails.

Based on the foregoing, we hold that the trial court did not err in granting Sungrown's motion for summary judgment. Accordingly, we affirm the trial court's grant of summary judgment to Sungrown.

II.    MOTION FOR RECONSIDERATION

Tokeland argues that the trial court abused its discretion in denying its motion for reconsideration because substantial justice had not been done and there was no evidence or reasonable inference to justify the decision. We disagree.

13

We review a trial court's order denial of a motion for reconsideration for an abuse of discretion. *Dynamic Res., Inc. v. Dep't of Revenue*, 21 Wn. App. 2d 814, 824, 508 P.3d 680 (2022). "A trial court abuses its discretion if its decision is 'manifestly unreasonable or exercised on untenable grounds or for untenable reasons.'" *Id*. (quoting *McCoy v. Kent Nursery, Inc.*, 163 Wn. App. 744, 758, 260 P.3d 967 (2011)).

CR 59(a) permits an aggrieved party to file a motion for a trial court to reconsider its decision or order. In relevant part, the court rule provides that:

> Such motion may be granted for any one of the following causes materially affecting the substantial rights of such parties:
> . . . .
> (7) That there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law;
> . . . .
> (9) That substantial justice has not been done.

CR 59(a)(7), (9).

Here, Tokeland appears to contend that substantial justice has not been done because of trial counsel's incompetence in failing to respond to the RFAs, by filing motions near deadlines, and by failing to submit evidence to support Tokeland's counterclaims. However, as a general rule, "the incompetence or neglect of a party's own attorney is not sufficient grounds for relief from a judgment in a civil action." *Lane v. Brown & Haley*, 81 Wn. App. 102, 107, 912 P.2d 1040 (1996). In *Lane*, this court rejected the Lanes' arguments that their attorney's failure to contact witnesses, failure to advise them of a motion for summary judgment, reliance on an incorrect legal theory at summary judgment, and late filing of a notice of appeal warranted vacation of the judgment under CR 60(b). 81 Wn. App. at 104-05. While *Lane* concerned CR 60(b), we conclude that decision's reasoning also applies in the CR 59 context as both concern the vacation of a court's

14

judgment. Because Tokeland raises the same arguments that have rejected by *Lane*, we hold that the trial court did not abuse its discretion in denying the motion for reconsideration on this ground.[3]

Next, Tokeland contends that the trial court abused its discretion in denying its motion for reconsideration because Sungrown's motion for summary judgment should have been denied. However, as set forth above, Tokeland failed to demonstrate any error in the trial court's order on summary judgment.

Based on the above, Tokeland has failed to demonstrate that the trial court abused its discretion in denying reconsideration based on CR 59(a)(7) or (9). Accordingly, we affirm the trial court's order denying Tokeland's motion for reconsideration.

III.     ATTORNEY FEES ON APPEAL

Sungrown requests its attorney fees on appeal under RAP 18.1 and section 14 of the lease agreement. We grant Sungrown's request.

RAP 18.1(a), (b) provides a party the "right to recover reasonable attorney fees or expenses on review" before this court, so long as the party requests the fees in its opening brief and "applicable law" grants the right to recover. We award attorney fees to the prevailing party "'only on the basis of a private agreement, a statute, or a recognized ground of equity.'" *Tedford v. Guy*, 13 Wn. App. 2d 1, 17, 462 P.3d 869 (2020) (quoting *Equitable Life Leasing Corp. v. Cedarbrook, Inc.*, 52 Wn. App. 497, 506, 761 P.2d 77 (1988)).

---

[3] Tokeland also appears to contend that attorney incompetence is akin to a default judgment to support its argument. We disagree because, unlike a default judgment, these proceedings were actually based on the merits of the parties' claims. *See Akhavuz v. Moody*, 178 Wn. App. 526, 532, 315 P.3d 572 (2013).

Section 14 of the lease agreement provides that, "[i]n the event that any action is filed in relation to this Lease, the unsuccessful party in the action will pay to the successful party, in addition to all the sums that either party may be called on to pay, a reasonable sum for the successful party's attorney fees." CP at 157.

Here, Sungrown is the prevailing party on appeal. Accordingly, we award attorney fees to Sungrown.

## CONCLUSION

We affirm the trial court's order granting Sungrown's motion for summary judgment and the trial court's order denying Tokeland's motion for reconsideration. We award Sungrown its attorney fees on appeal in an amount to be set by our commissioner.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Maxa, J.

Glasgow, C.J.